STATE, Plaintiff-Respondent, v. VERHASSELT, Defendant-Appellant.

*No. 76-211-CR. Submitted on briefs April 6, 1978.—Decided June 6, 1978.*
(Also reported in 266 N. W. 2d 342.)

For the appellant the cause was submitted on the brief of *Henry B. Buslee* of Fond du Lac.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette*, attorney general, and *Marguerite M. Moeller*, assistant attorney general.

CONNOR T. HANSEN, J. Shortly after 2 a.m. on December 7, 1975, officers of the city of Fond du Lac police department were dispatched to the intersection of Cotton and North Main streets in that city to investigate a report of shots being fired. Near the intersection, they found a man by the name of Gary Hensen slumped over in his car with a bullet wound in his left shoulder. Nearby they apprehended the defendant, seventeen-year old Gregory A. Verhasselt, with a 30.06 rifle. Near an alleyway they found another rifle, a .35 mm pump-action Remington. The defendant was advised of his constitutional rights and taken to the police station. About ninety minutes later, after having been twice more advised of his rights, the defendant, in the presence of his parents, gave the police a statement concerning the events of the evening. He maintains that the statement was not voluntarily given because he was highly intoxicated at the time.

In his statement, the defendant said that he had spent the evening in a tavern, and had consumed about 30 glasses of beer in four hours. When he left the bar at

12:30 a.m., he was "really loaded," and had trouble finding his way home, he said. After roaming around at home, he took some ammunition and two rifles—his own 30.06 and his father's .35 mm pump-action Remington—from a gun case and walked to the area of Cotton and North Main streets, several blocks away. He loaded the guns and fired the .35 mm rifle toward what he believed to be a police squad car. He ran between some houses, returned to Cotton street and fired three or four more shots toward Main street. When he saw headlights approaching he ran north and was apprehended by the police, the statement concluded.

Gary Hensen, the man who had been shot, underwent surgery and subsequently recovered from the wound. The attending surgeon elected not to remove the bullet from Hensen's chest cavity, and it was therefore not identified. Hensen had no prior acquaintance with the defendant.

Additional facts are set forth in considering the issues, which are:

1. Did the trial court err in admitting the defendant's confession into evidence?

2. Was the verdict supported by the evidence?

3. Did the trial court err in refusing to instruct the jury on the offense of injury by negligent use of a weapon?

4. Did the trial court err in refusing to instruct the jury on the defense of intoxication?

The trial court conducted a *Goodchild* hearing[1] to determine whether the defendant had voluntarily given his statement to the police. The statement was held to have been voluntarily made and therefore admissible in evidence.

The defendant asserts that his incriminating statement to the police should not have been admitted into evidence

---

[1] *State ex rel. Goodchild v. Burke,* 27 Wis.2d 244, 133 N.W.2d 753 (1965), *cert. den.* 384 U. S. 1017.

because at the time it was given, he was so intoxicated as to be incapable of making a voluntary statement.

At a *Goodchild* hearing, the burden is on the state to prove beyond a reasonable doubt that the confession was voluntary. *Johnson v. State,* 75 Wis.2d 344, 249 N.W.2d 593 (1977) ; *Grennier v. State,* 70 Wis.2d 204, 209, 234 N.W.2d 316 (1975) ; *Blaszke v. State,* 69 Wis.2d 81, 86, 230 N.W.2d 133 (1975) ; *State ex rel. Goodchild v. Burke, supra,* at 264. On review, however, this court will not upset the trial court's finding with respect to voluntariness unless the finding is contrary to the great weight and clear preponderance of the evidence. *LaTender v. State,* 77 Wis.2d 383, 391, 253 N.W.2d 221 (1977) ; *Johnson v. State, supra,* at 352; *Grennier v. State, supra,* at 210 ; *Norwood v. State,* 74 Wis.2d 343, 364, 246 N.W.2d 801 (1976) ; *McAdoo v. State,* 65 Wis.2d 596, 223 N.W.2d 521 (1974). On review, any conflicts in testimony regarding the circumstances of the confession will be resolved in favor of the trial court's finding. *Norwood v. State, supra,* at 364; *McAdoo v. State, supra,* at 605; *State v. Schneidewind,* 47 Wis.2d 110, 116, 176 N.W.2d 303 (1970).

In determining whether a confession is voluntary under the totality of the circumstances, the personal characteristics of the confessor must be very carefully balanced against any pressures to which he was subjected to induce the confession. *Johnson v. State, supra,* at 352; *Norwood v. State, supra,* at 364; *Grennier v. State, supra,* at 210 ; *State v. Wallace,* 59 Wis.2d 66, 81, 207 N.W.2d 855 (1973). Among the factors to be considered are the age of the accused, his education and intelligence, his physical and emotional condition, whether he has had prior experience with the police, whether the defendant was apprised of his rights, whether he requested counsel and the response to any such request, the length and condition of his interrogation, and any physical or psycho-

logical pressures, inducements, methods or strategies used by the police to obtain the confession. *Norwood v. State, supra,* at 365; *Grennier v. State, supra,* at 210; *State v. Schneidewind, supra,* at 117; *McAdoo v. State, supra,* at 606; *Brown v. State,* 64 Wis.2d 581, 587, 588, 219 N.W.2d 373 (1974).

Resolving conflicting testimony in favor of the trial court's finding, the record in the instant case shows that the defendant was advised of his *"Miranda* rights"[2] at the time of his arrest. About an hour later he was taken to the office of police captain James F. Thome. Thome was acquainted with the defendant, having been his seventh and eighth grade football and basketball coach. The defendant agreed to make a statement, but asked that his parents be present, and they were brought in.

Captain Thome then read the defendant's rights to him, and further explained them in everyday language. He also gave the defendant a copy of his rights to read. The defendant said that he had been given his rights previously, and said he knew that he did not have to make a statement and that he was entitled to have a lawyer present. He was asked if he waived his right to a lawyer, and he said that he did. A form waiver of his rights was read to him, and he read it and agreed to sign it. He signed and dated the waiver at 3:27 a.m., approximately seventy-five minutes after his arrest.

The defendant's rights were again read to him from a "Voluntary Statement" form used by the police. The defendant then made the incriminating statement previously described. This statement was given in narrative form, with some questions for clarification, first orally and then a second time as Captain Thome prepared a typewritten statement using a combination of the defendant's words and his own for greater clarity. At no

---

[2] *Miranda v. Arizona,* 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed.2d 694 (1966).

time during the recitation or typing of the statement did either the defendant or his parents request an attorney, or ask to stop the interrogation. The defendant read the typed statement, making corrections as he did so, and initialled the corrections.

At this point, before the statement was signed, the defendant's parents asked Captain Thome whether they should have a lawyer present. He answered that that was up to them, and said he would not advise them because he would be biased in the matter. He left the room for five or ten minutes so they could discuss the question with their son.

When Thome returned, the parents felt that the defendant should have a lawyer, but he said he didn't want one and wasn't going to get one. He then proceeded to sign the statement. Although there was a telephone in the room, and the parents were free to call a lawyer, they did not do so. The parents had never employed a lawyer; they hesitated to call one in the middle of the night; they did not know who to call; and they were not sure if one was necessary.

At no point, however, did either the defendant or his parents ask the police to provide a lawyer. Mrs. Verhasselt testified, "We didn't request an attorney at the time; we wondered if we should get an attorney because we felt he wasn't right; that he should have somebody." She testified her husband had told the defendant it was up to him.

There is no suggestion that the defendant was subjected to any improper coercion or pressures by the Fond du Lac police. On the contrary, the interrogation was conducted in an exemplary manner. The defendant did not request food, medication, or an opportunity to sleep. He was offered and given a cup of coffee. The length of the interrogation, approximately an hour and a half, was not lengthy. *See: Johnson v. State, supra,* at 357 (one hour and thirty-five minute interrogation not lengthy);

and *State v. Carter,* 33 Wis.2d 80, 96, 97, 146 N.W.2d 466 (1966) (ninety-minute interrogation not unreasonable on its face). The defendant's mother agreed that he was treated well and was not coerced in any way.

Admission of the confession is challenged entirely on the ground that the defendant lacked the mental capacity to make a voluntary statement. The state has the burden of proving beyond a reasonable doubt that the confession was the voluntary product of a free and unconstrained will, reflecting deliberateness of choice. *Norwood v. State, supra,* at 364; *Triplett v. State,* 65 Wis.2d 365, 222 N.W. 2d 689 (1974); *State v. Hunt,* 53 Wis.2d 734, 740, 193 N.W.2d 858 (1972); *State v. Carter, supra* at 88. The question is whether the confession represents the uncoerced free will of the declarant or whether, under the circumstances, he was unable to make a rational choice. *Norwood v. State, supra,* at 364; *Roney v. State,* 44 Wis. 2d 522, 533, 171 N.W.2d 400 (1969). In the context of a custodial interrogation, voluntariness must include a considerable deliberateness of choice. *State v. Hoyt,* 21 Wis.2d 284, 289, 128 N.W.2d 645 (1964) *(rehearing).*

The state thus bears a substantial burden of proof. Particular care is appropriate where, as here, the accused is a minor unrepresented by counsel. In such a context, the United States Supreme Court has said that:

". . . the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair." *In re Gault,* 387 U.S. 1, 55 (1967).

Review of the factors bearing on the defendant's state of mind supports the conclusion of the trial court that the confession was voluntarily given.

Among these factors are the age and education of the defendant. The defendant was seventeen years old and had an eleventh grade education at the time of the shooting. As far as the record shows, he had no prior criminal record or experience with the police. These are significant considerations.

However, these factors do not, *ipso facto*, prevent the defendant from making a voluntary statement. *See, e.g., Theriault v. State,* 66 Wis.2d 33, 223 N.W.2d 850 (1974) (seventeen and one-half year-old defendant) and *McAdoo v. State, supra* (eighteen year-old defendant with eleventh grade education). Moreover, the defendant was not alone with the police at the time he confessed; his parents were present. In excluding the confession of a fourteen year-old defendant who had been held, incommunicado for five days, the Supreme Court emphasized:

". . . A lawyer or an adult relative or friend could have given the petitioner the protection which his own immaturity could not. Adult advice would have put him on a less unequal footing with his interrogators. . . ." *Gallegos v. Colorado,* 370 U.S. 49, 54 (1962).

Here such adult advice was available.

Although the absence of defense counsel is one factor to be considered, *Theriault v. State, supra,* at 41, *Greenwald v. Wisconsin,* 390 U.S. 519 (1968), coercion is not to be inferred where a juvenile defendant is fully advised of his rights and elects not to have counsel present. *See: Theriault v. State, supra,* where a juvenile defendant asked police not to call his grandmother. Here, the defendant said that he did not want a lawyer, argued with his parents about it, and proceeded without one.

Although late night interrogations and a defendant's lack of sleep ordinarily weigh against the voluntariness of a confession, *see, e.g., Johnson v. State, supra,* at 355;

*State v. Wallace, supra,* at 84, these concerns are offset in the present case by the fact that the interrogation took place shortly after commission of the crime and that the defendant did not indicate that he was tired or sleepy.

The real basis of the defendant's argument is that he was too intoxicated to make a voluntary statement. The defendant testified that he drank from 20 to 30 seven-ounce glasses of beer within four hours, ending at 12:30 a.m.; that he was "pretty loaded" and had trouble finding his way home; and that he was later unable to remember anything to do with the shooting. To support this assertion, the defense called two witnesses who testified that shortly after 1 a.m. they saw a young man of the defendant's description stagger down the street, into the alley from which the shots were later fired, and back onto the sidewalk, where he fell down.

The extent of the defendant's intoxication is also shown by a virtually unintelligible eight-page note which he left at his parents' house after returning from the tavern. This unintelligible note, which appears to include such fragments as "Greg I'm sorry Greg love love love . . . in sane Greg in sane insane . . . one way or another. beilieve in me ill kill, my self . . . ." is evidence that the defendant was incoherent, irrational and deeply disturbed at whatever time the note was written.

However, the defendant's written statement was not taken until 3:55 a.m., about three and one-half hours after the defendant said he left the tavern, and was not signed until 4:47 a.m. The police officers present testified that although it was clear that the defendant had been drinking, and that he had alcohol on his breath and slurred his words, he was alert, attentive and coherent; he acted normally; and he knew what he was doing.

Captain Thome, who had known the defendant when he was in grade school several years earlier, said that he was fully convinced that defendant was absolutely

coherent. At trial, Thorne testified that there were some effects of alcohol but that the defendant was by no means drunk. His answers made sense in the context of the questions. He stated that he had been given his rights previously and understood them and did not want a lawyer, and he read the written statement, making corrections on his own initiative.

Against this evidence is the testimony of Mrs. Verhasselt that her son's eyes were glassy, and that she knew he wasn't in his right mind when she found the incoherent note. She and her husband felt that the defendant "wasn't right," she testified, and they didn't know if he knew what he was saying. However, when asked whether her son was under the influence of liquor at the time he confessed, she replied only, "I imagine you would say he was."

Mrs. Verhasselt also testified that she and her husband requested a blood test for intoxication (the record does not state whether such a test was given) and also asked to have a doctor examine their son. They offered to pay for the doctor, she said. Captain Thorne testified that Mrs. Verhasselt did not request immediate medical attention for her son, but said only that she thought there was something wrong with him and he would need medical attention.

On this record it cannot be said that the trial court's finding is against the great weight and clear preponderance of the evidence. Resolving the conflicting testimony in favor of the trial court's finding, it appears that the defendant was coherent and rational, and that the confession was a voluntary product of an unconstrained will.

In addition, the defendant's objection to the statement is one largely addressed to the trustworthiness of the statement. Trustworthiness and credibility are for the

jury to determine. *State v. Bergenthal,* 47 Wis.2d 668, 678–679, 178 N.W.2d 16 (1970), *cert. den.* 402 U.S. 972; *cf. Norwood v. State, supra,* at 366, 367; *State v. Hernandez,* 61 Wis.2d 253, 259, 212 N.W.2d 118 (1973); *Roney v. State, supra,* at 532, 533.

The defendant also maintains that intoxication rendered him incapable of giving an intelligent waiver of his *Miranda* rights to have a lawyer present and to remain silent. This question is conceptually distinct from the question addressed in the *Goodchild* hearing. *State v. Parker,* 55 Wis.2d 131, 135, 197 N.W.2d 742 (1972). In *Goodchild* the question is whether the statement was voluntary; in *Miranda* the question is whether *Miranda*-warnings were properly given and intelligently waived. *Norwood v. State, supra,* at 362; *State v. Hernandez, supra; Roney v. State, supra,* 533.

In the instant case there is no challenge to the adequacy of the *Miranda*-warnings given three times to the defendant. Rather, as in *State v. Parker, supra,* at 137:

". . . [t]he thrust of the argument is directed to whether the defendant understood his rights and affirmatively waived his right to counsel before proceeding with the statement. . . ."

As in *Norwood v. State, supra,* at 363, the defendant argues:

". . . that he could not intelligently have waived his *Miranda* rights because his own mental capabilities prohibited him from fully understanding them; and not fully understanding them, he could not intelligently waive them. . . ."

Although this question was not clearly separated, in the pretrial hearing, from the *Goodchild* issue of voluntariness, this fact is understandable because in this case the question whether defendant could intelligently waive his *Miranda* rights was "in essence a question of voluntariness." *Norwood v. State, supra,* at 363. The trial

court found that the statement was voluntarily and intelligently made, and in a hearing on postverdict motions interpreted the earlier ruling as a finding that all the requirements of *Miranda* had been met. This finding is not against the great weight and clear preponderance of the evidence.

The testimony shows that when the defendant was advised a second time of his rights at the station house, he replied that he had already been told his rights. His rights were nevertheless read to him again, and were restated in ordinary language, and he appeared to read a written copy of them. He then signed a waiver of the rights. Captain Thome testified that the defendant said be knew he had a right to a lawyer and the right not to make a statement, and that he waived the right to counsel. Mrs. Verhasselt testified that her son said he didn't want a lawyer. He argued with his parents about whether he should get one.

The defendant's *Miranda* rights were given to him at least three times in various forms. The officers testified that the defendant was alert and coherent, gave sensible answers to questions, and appeared to understand what he was doing. This record supports the trial court's finding that the requirements of *Miranda* were satisfied and that the defendant's rights were intelligently waived. The trial court did not err, therefore, in admitting the statement into evidence.

The defendant also contends that the confession was insufficiently corroborated by other evidence to support conviction. It is a basic principle that conviction of a crime may not be grounded on the admission or confessions of the accused alone. *Triplett v. State, supra,* 371, 372; *Jackson v. State,* 29 Wis.2d 225, 138 N.W.2d 260 (1965); *see also: Barth v. State,* 26 Wis.2d 466, 132 N.W.2d 578 (1965).

". . . However, as to the need for corroborating evidence, all the elements of the crime do not have to be proved independently of an accused's confession—it is enough that there be some corroboration of the confession in order to sustain the conviction. As this court has put it, '. . . The corroboration, however, can be far less than is necessary to establish the crime independently of the confession. If there is corroboration of any significant fact, that is sufficient under the Wisconsin test.' " *Triplett v. State, supra,* at 372, *quoting Holt v. State,* 17 Wis.2d 468, 480, 117 N.W.2d 626 (1962).

In the instant case there is considerable corroborative evidence. The defendant was seen, immediately after the shooting, alongside a garage adjacent to the alley from which the shots are believed to have been fired. He was carrying a loaded 30.06 rifle, and he attempted to escape. He fit the description given by several witnesses. His father's .35 mm pump-action Remington rifle was found at the scene. It is unnecessary to recite further facts to establish that the confession was adequately corroborated.

The defendant identifies what he claims to be four weaknesses in the state's case. We have considered each of them and no useful purpose would be served by setting forth evidentiary facts to refute them. None of the contentions advanced by the defendant compels the conclusion that a jury acting reasonably could not have been convinced of the defendant's guilt. The confession is amply corroborated by independent evidence.

The defendant next asserts that the trial court erred in failing to instruct the jury with regard to the offense of injury by negligent use of a weapon, contrary to sec. 940.24, Stats., as a lesser included offense. This argument is misconceived; injury by negligent use of a weapon is not a lesser included offense within injury by conduct regardless of life.

Lesser included offenses are defined by sec. 939.66, Stats.,[3] which contains five subsections. Subsections (2), (4) and (5) are clearly inapplicable. Subsection (2) concerns criminal homicides. Subsection (4) applies to attempts, and subsection (5) applies to specified crimes not involved here.

Subsection (3) requires that the crimes differ only in that the charged offense requires a "criminal intent," while the lesser offense requires recklessness or negligence. In the criminal statutes of Wisconsin, "criminal intent" as an element of a crime is indicated by the terms " 'intentionally,' " " 'with intent to,' " " 'with intent that,' " or by forms of the verbs " 'know' " or " 'believe.' " Sec. 939.23 (1), Stats. No such term appears in the offense of injury by conduct regardless of life.

Rather, sec. 940.23, Stats., requires only a showing of "conduct . . . evincing a depraved mind, regardless of human life." Identical language appears in sec. 940.02, defining second-degree murder, and this court has held that that offense does not require a criminal intent. *State v. Carter*, 44 Wis.2d 151, 155, 170 N.W.2d 681 (1969); *see also: Jones (George Michael) v. State*, 70 Wis.2d 41,

---

[3] *"939.66 Conviction of included crime permitted.* Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:

*"(1)* A crime which does not require proof of any fact in addition to those which must be proved for the crime charged; or

*"(2)* A crime which is a less serious type of criminal homicide than the one charged; or

*"(3)* A crime which is the same as the crime charged except that it requires recklessness or negligence while the crime charged requires a criminal intent; or

*"(4)* An attempt in violation of s. 939.32 to commit the crime charged; or

*"(5)* The crime of attempted battery when the crime charged is rape, robbery, mayhem or aggravated battery or an attempt to commit any of them."

49, 233 N.W.2d 430 (1975). Since the concept of a "depraved mind, regardless of human life" is the same in both offenses, *State v. Weso,* 60 Wis.2d 404, 408, 210 N.W.2d 442 (1973), it follows that no criminal intent is required for injury by conduct regardless of life. Sec. 939.66(3) is therefore inapplicable.

Section 939.66(1), Stats., provides that a lesser included crime is "[a] crime which does not require proof of any fact in addition to those which must be proved for the crime charged." Injury by negligent use of a weapon requires proof of a fact in addition to those required for injury by conduct regardless of life: it requires proof that a weapon was used.

The circumstance that a weapon was in fact used in this case is irrelevant; the test for a lesser included offense under sec. 939.66(1), Stats., is concerned only with the legal elements of the crime and not with the peculiar facts of the case at bar. *Geitner v. State,* 59 Wis.2d 128, 207 N.W.2d 837 (1973); *State v. Smith,* 55 Wis.2d 304, 310, 198 N.W.2d 630 (1972).

*State v. Melvin,* 49 Wis.2d 246, 181 N.W.2d 490 (1970), implicitly approves consideration of the peculiar facts of a case in determining lesser included offenses. There, this court held that on the facts of that case, reckless use of a weapon, contrary to sec. 941.20(1)(a), (c), was a lesser included offense within attempted murder. This holding is contrary to the rule of the subsequent cases of *Geitner v. State, supra,* and *State v. Smith, supra.* Any implication in *Melvin* that the facts of a case determine whether a crime is a lesser included offense is withdrawn. When determining whether a crime is a lesser included offense under sec. 939.66(1), the determinative factor is the statutorily defined elements of the respective crimes.

For one crime to be included within another, it must be " 'utterly impossible' " to commit the greater crime without committing the lesser. *State v. Smith, supra,* at 310, *quoting Holesome v. State,* 40 Wis.2d 95, 100, 101, 161 N.W.2d 283 (1968).

The trial court did not err in refusing to instruct the jury on injury by negligent use of a weapon. Indeed, it could not have done otherwise. A trial court is not permitted to instruct or submit a verdict on a lesser crime which is not included in any of the charged offenses. *Clark v. State,* 62 Wis.2d 194, 205, 214 N.W.2d 450 (1974).

Finally, the defendant contends that the trial court erred in refusing to instruct the jury as to the defense of intoxication. Sec. 939.42, Stats., provides in part that:

"An intoxicated or a drugged condition of the actor is a defense only if such condition:
" . . . .
"(2) Negatives the existence of a state of mind essential to the crime."

The defendant argues that his intoxicated condition at the time of the shooting negated the existence of a state of mind essential to the crime, specifically a "depraved mind, regardless of human life."

This court has rejected the argument that the depraved mind element may be negated by intoxication. In *Ameen v. State,* 51 Wis.2d 175, 184, 186 N.W.2d 206 (1971), which involved a charge of second-degree murder, this court considered "whether 'conduct . . . evincing a depraved mind,' constitutes a 'state of mind essential to the crime' " which can be negated by intoxication. The court there held that the "conduct . . . evincing a de-

praved mind" language of the second-degree murder statute, sec. 940.02, Stats., does not require the existence of a depraved mind in the actor at the time of the crime, but requires only that the actor's *conduct* be such as *evinces* such a state of mind. *Ameen, supra,* therefore held that intoxication is not a defense to second-degree murder. *Accord: Jones (George Michael) v. State, supra,* 50.

This result is in accord with this court's characterization of a depraved mind as a mind which "lacks a moral sense, an appreciation of life, is unreasonable and lacks judgment." *State v. Weso, supra,* at 411. Intoxication is more likely to induce such a state of mind than to negate it. In *State v. Weso, supra,* at 409, it was specifically observed that a depraved mind has been said to be "a mind which may be inflamed by liquor and passion to such a degree that it ceases to care for human life and safety."

The depraved mind element of the offense of second-degree murder does not require the existence of a criminal intent within the meaning of sec. 939.23, Stats.[4] *State v. Carter, supra,* 44 Wis.2d 155. Moreover, the offense does not require the existence of any specific state of mind in the actor. *Jones (George Michael) v. State, supra,* at 49. We have recently reiterated that the second-degree murder statute:

". . . does not require the existence of any particular state of mind in the actor at the time of the crime but only requires that there be conduct imminently dangerous to human life, which conduct evinces a depraved mind." *Wagner v. State,* 76 Wis.2d 30, 48, 250 N.W.2d 331 (1977).

---

[4] Criminal intent, within the meaning of sec. 939.23, Stats., requires that the actor have a purpose to do the thing or cause the result specified by the statute, or to believe that his act, if successful, will cause that result.

The element of a depraved mind necessary for the offense of second-degree murder is no different from that required for the offense of injury by conduct regardless of life. *State v. Weso, supra,* at 408. It follows, therefore, that the latter offense "does not require the existence of any particular state of mind . . ." *Wagner v. State, supra,* at 48.

A depraved mind need not have a criminal intent, but rather has only "a general intent to do the acts and the consciousness of the nature of the acts and possible result . . ." *State v. Weso, supra,* at 411, 412, *quoted* in *Wagner, supra,* at 46. ". . . [T]he only intent necessary for the purposes of establishing the element of 'depraved mind' is the intent to do the act . . ." *Wagner, supra,* at 47.

Although intoxication will not negate the depraved mind element of a crime, *Ameen, supra,* it may be that, in a proper case, a sufficiently high degree of intoxication could negate the existence of a general intent to do the acts. As this court has stated, intoxication is a defense if the accused is so completely intoxicated as to be " '. . . incapable of forming *intent to perform an act* or commit a crime . . .' " *Staples v. State,* 74 Wis.2d 13, 21, 245 N.W.2d 679 (1976), *quoting State v. Guiden,* 46 Wis.2d 328, 331, 174 N.W.2d 488 (1970). (Emphasis added.)

However, it cannot be said that the instant defendant was entitled to have the jury instructed on such a defense. Such an instruction is proper only if, viewing the evidence in the light most favorable to the accused, a jury could reasonably have found that he was so intoxicated that the act in question, the act of firing a rifle at a moving vehicle, was unintentional. *Cf. Jones v. State,* 69 Wis.2d 337, 346, 230 N.W.2d 677 (1975). The evi-

dence here does not permit the inference that the defendant did not intend his acts.

The defendant's confession stated that he took the two rifles and ammunition from the gun case in the family home and that he loaded the rifles while heading west toward Main street. He fired at what he took to be a squad car, and what appeared to be a bullet hole was later found in a car which passed the intersection at this time. Expecting to be pursued, defendant fled between some houses. When he was not pursued, he returned to his former position and fired three or four more shots, one of which succeeded in striking the victim at a distance of several hundred feet. On this record it simply cannot be said that the defendant did not intend to fire a rifle at moving vehicles. The trial court did not err in refusing to instruct on the defense of intoxication.

*By the Court.*—Judgment affirmed.