KIRBY, Plaintiff in error, v. STATE, Defendant in error.†

Court of Appeals

*No. 77–667–CR. Submitted on briefs September 12, 1978.—
Decided October 27, 1978.*
(Also reported in 272 N.W.2d 113.)

---

† Petition to review denied, February 19, 1979.

For the plaintiff in error the cause was submitted on the briefs of *Howard B. Eisenberg,* state public defender, and *Melvin F. Greenberg,* assistant state public defender.

For the defendant in error, the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, and *Michael R. Klos,* assistant attorney general.

Before Decker, C.J., Cannon, P.J., and Robert W. Hansen, Reserve Judge.

DECKER, C.J.,   The issues raised by Kirby on appeal relate to alleged errors at the preliminary examination

and the trial, and accordingly we deal with them under those headings.

## PRELIMINARY EXAMINATION

Complainant Schindler was the sole witness at the preliminary hearing. She had returned to her apartment from an afternoon walk. Her roommate and four men were present. Schindler was tied hands and feet when Kirby came to the premises. Kirby untied her hands and feet and showed the others how to retie her "the correct way." Apparently she was placed facedown with her hands and feet tied to the bed. Three of the men, other than the defendant, beat Schindler with curtain rods, an electrical cord and a belt over a period of approximately five hours. Her roommate also participated in the beating. The three men threw lighted cigarettes, matches and marijuana roaches on her. Kirby's part in the affair included pouring salt and shaving lotion on her back and legs and attempting to shave her head after her hair was cut by others.

Schindler testified that she suffered a fractured rib, burns and four or five scars on her legs. Kirby was bound over for trial on aggravated battery after his motion to dismiss the charge was denied. He contended then, as now, that there was insufficient evidence of "great bodily harm" because the evidence is insufficient to support an inference of 1) a high probability of death; 2) serious permanent disfigurement, or 3) a permanent or protracted loss or impairment of the function of any bodily member or organ as specified in sec. 939.22(14), Stats. Although the state does not concede Kirby's position with respect to those specified elements, it makes no serious contrary argument.

This case focuses, as did *LaBarge v. State,* 74 Wis.2d 327, 246 N.W.2d 794 (1976), on the phrase "other serious

bodily injury" incorporated in the definition of great bodily harm. Section 939.22(14), Stats., defines great bodily harm as:

[B]odily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or *other serious bodily injury*. [Emphasis supplied.]

The test for sufficiency of evidence at a preliminary hearing and the standard for appellate review of such sufficiency was reiterated in *State v. Olson*, 75 Wis.2d 575, 250 N.W.2d 12 (1977):

It is well established in this state that the evidence at a preliminary hearing need not be sufficient to prove the charge against the defendant beyond a reasonable doubt. The reviewing court can examine the evidence only sufficiently to discover whether there was any substantial ground for the exercise of judgment by the committing magistrate. When the reviewing court has discovered that there is competent evidence for the judicial mind of the examining magistrate to act on in determining the existence of the essential facts, it has reached the limit of its jurisdiction and cannot go beyond that and weigh the evidence. p. 584.

Applying the above standards, we believe the evidence of the five-hour torment at the preliminary examination is sufficient to establish "serious bodily injury" and the validity of the bindover on aggravated battery. Kirby asserts that because *LaBarge* and *Flores v. State*, 76 Wis.2d 50, 250 N.W.2d 720 (1977), in considering the element of great bodily harm, involved a stabbing and a beating about the head with a pool cue, those events involved a high possibility of death. Circularly, he would restore that specification of the statutory definition and

narrow the broadened definition of great bodily harm resulting from the phrase "other serious bodily injury." His reasoning was expressly rejected in *LaBarge:*

Our study of the legislative history of the particular statute leads, however, to the conclusion that the phrase, "or other serious bodily injury," was designed as an intentional broadening of the scope of the statute *to include bodily injuries which were serious, although not of the same type or category* as *those recited in the statute.* p. 332. [Emphasis supplied.]

Before trial the court granted the state's motion to amend the charge of aggravated battery to mayhem contrary to sec. 940.21, Stats., which provides:

Whoever, with intent to disable or disfigure another, cuts or mutilates the tongue, eye, ear, nose, lip, limb, or other bodily member of another may be fined not more than $5,000 or imprisoned not more than 15 years or both.

Once the magistrate found probable cause to believe the defendant had committed the crime of aggravated battery, the prosecutor was not bound, in preparing the information, to that charge. "Rather, the prosecutor may charge in the information any crime not wholly unrelated to the transaction and facts adduced at the preliminary examination." *Wittke v. State ex rel. Smith,* 80 Wis.2d 332, 352, 259 N.W.2d 515 (1977). The charge of mayhem contained in the information in this case was not "wholly unrelated to the transactions and facts adduced at the preliminary examination." The amendment of the information to charge mayhem was therefore proper.

### THE TRIAL

The same testimony adduced at the preliminary hearing was offered at the trial. In addition, it was estab-

lished that: Schindler had been stripped of her clothing before being tied on the bed; the five-hour torture period was interrupted only a couple of times for a few minutes; one of the torturers had taken a knife and gone down the back of the complainant's leg with it; Schindler blacked out on two occasions before leaving the apartment after being untied; she was hospitalized for one month and two days while recovering from the beating; four days of the hospitalization were spent in the intensive care unit and the balance of the hospitalization was spent in the psychiatric unit; and police interviews at the emergency ward of the hospital where she was taken for initial treatment had to be suspended because she was screaming with pain, she was confused and at times hysterical.

At the conclusion of the trial, the court granted Kirby's motion to dismiss the mayhem charge upon the ground that there was not sufficient evidence to establish intent to disfigure as the trial court defined that element. Over the objections of defense counsel, the trial judge submitted to the jury the charges of injury by conduct regardless of life, sec. 940.23, Stats., endangering safety by conduct regardless of life, sec. 941.30, Stats., and battery, sec. 940.20, Stats. Kirby was convicted of endangering safety by conduct regardless of life.

Kirby contends that neither injury by conduct regardless of life nor endangering safety by conduct regardless of life is a lesser included offense of mayhem, and thus the conviction of endangering safety by conduct regardless of life was improper. He also contends that the conviction is not supported by the evidence. We disagree with both contentions.

The trial judge's action in amending the charge to injury by conduct regardless of life was proper if that crime is a lesser included offense of mayhem.

When a defendant is charged with a crime he is automatically put on notice that he is subject to an al-

ternative conviction of any lesser included crime; the whole contains all its parts. Only if the charge is changed to a crime which is not a lesser included offense can the argument be made that the defendant is entitled to notice of the reduced charge and be given an opportunity to plead to that charge. *Dunn v. State*, 55 Wis.2d 192, 197, 197 N.W.2d 749 (1972).

Accordingly, we consider whether injury by conduct regardless of life is a lesser included offense of mayhem.

Injury by conduct regardless of life, sec. 940.23, Stats., is defined as:

Whoever causes great bodily harm to another human being by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life . . . .

A lesser included crime, sec. 939.66 (1), Stats., is

A crime which does not require proof of any fact in addition to those which must be proved for the crime charged; . . . .

Kirby contends that injury by conduct regardless of life requires proof of three elements not required for conviction of mayhem; (1) great bodily harm; (2) conduct imminently dangerous to another; and (3) conduct evincing a depraved mind regardless of life. *Balistreri v. State*, 83 Wis.2d 440, 265 N.W.2d 290 (1978).

In order to prove mayhem, as charged in the first the Wisconsin Supreme Court held that mayhem necessarily includes the infliction of great bodily harm by means intended to cause great bodily harm:

In order to prove mayhem, as charged in the first count, the state must prove that defendant acted with malicious intent to maim or disfigure and that he cut or tore off Gerber's ear. We are satisfied that the cutting or tearing off of an ear, or even the portion disclosed by the evidence here, constitutes great bodily harm. Thus if the state had successfully proved the offense charged in the first count, it would have proved every element of the

offense of assault with intent to do great bodily harm. That is the test of whether an offense not expressly charged is included within the charge specifically set forth. p. 437.

A conviction for mayhem thus requires proof of specific intent to disable or disfigure as distinguished from a general intent to do the acts and the consciousness of the nature of the acts and possible results. *State v. Weso,* 60 Wis.2d 404, 411–12, 210 N.W.2d 442 (1973) ; *Balistreri v. State, supra* at 448–49. The statutory element of intent is one factor that distinguishes the crime from injury by conduct regardless of life. *State v. Verhasselt,* 83 Wis.2d 647, 663, 266 N.W.2d 342 (1978).

In addition to the specific intent to disable or disfigure, the statutory elements of mayhem[1] are (a) cutting or mutilating (b) the tongue, eye, ear, nose, lip, limb or other bodily member of the victim.

Although at common law mayhem required proof of mutilation or dismemberment that affected one's combat ability, the statutory enactments creating the crime have not required such extensive mutilation or disfigurement. Nonetheless, "cuts or mutilates" as used in the statute requires proof of an act of greater severity than a mere nick with a knife.[2] We believe that "cutting or mutilation," a statutory element of mayhem, requires an injury that constitutes "great bodily harm" as interpreted in *LaBarge, supra,* and required as an element of injury by conduct regardless of life.

Similarly, in act of cutting or mutilation of requisite severity constitutes not only conduct imminently dangerous to another but also evincing a depraved mind regard-

[1] Sec. 940.21, Stats.

[2] LaFave & Scott, *Handbook on Criminal Law,* (1972) at 615; Annot., 16 A.L.R. 955 (1922) and 58 A.L.R. 1320 (1929).

less of life and the cause and effect relationship between the injury and the conduct.[3] Therefore, we find it "utterly impossible" to commit mayhem without committing injury by conduct regardless of life.[4] Thus, injury by conduct regardless of life does not require proof of any additional fact to those required to prove the crime charged.[5]

In making our analysis we are mindful of the admonition of the Wisconsin Supreme Court that we are only to be concerned with "the legal elements of the crimes and not with the particular facts established in the case at hand."[6]

To justify submission of an instruction on a lesser included crime not only must it appear that the statutory elements of the lesser offense are included within the charged offense, but also a reasonable view of the evidence adduced must support conviction of the lesser offense while leaving reasonable doubt as to the accused's guilt of the charged offense.[7]

The evidence in the case at hand deals in part with cigarette burn scars as mutilation. Although our view as trier of the fact would be to the contrary, we think that a jury might reasonably doubt that the evidence established either intent to disable or disfigure and might also reasonably doubt that the scars constituted mutila-

---

[3] *Randolph v. State*, 83 Wis.2d 630, 641, 266 N.W.2d 334 (1978).

[4] *Randolph v. State, supra* at 641; *State v. Verhasselt, supra* at 665.

[5] Sec. 939.66(1), Stats.

[6] *Randolph v. State, supra* at 640; *State v. Verhasselt, supra* at 664.

[7] *Randolph v. State, supra* at 643; *Geitner v. State*, 59 Wis.2d 128, 207 N.W.2d 837 (1973).

tion. We therefore find justification for the trial court's submission of the charge of injury by conduct regardless of life.

Endangering safety by conduct regardless of life does not involve conduct causing "great bodily harm." However, it is a lesser included crime of injury by conduct regardless of life.[8] The question remains, does the evidence justify submission of the lesser included offense of endangering safety by conduct regardless of life? We believe the evidence of injury constituting great bodily harm, as that term is interpreted in *LaBarge,* was more extensive than the evidence of "mutilation." For instance, there was evidence of a fractured rib and evidence with respect to the long hospitalization in the Mt. Sinai Hospital psychiatric unit. As triers of the fact, we would have found injury. However, the evidence of injury is *not* so conclusive that it requires us to hold that the jury could *not* reasonably view the evidence as it did. The trial judge was justified in finding that a reasonable view of the evidence established a reasonable doubt of injury and he was therefore justified in submitting to the jury the lesser included crime of endangering safety by conduct regardless of life.

Based upon the evidence, we do not view the jury's verdict as a compromise of its duty to choose between acquittal and conviction by selecting a lesser included crime not supported by a reasonable view of the evidence. The baseness and depravity of the defendant's participatory conduct in the five-hour ordeal of torture tends to influence an evaluation of the magnitude of the victim's injuries. When one views only the physical evidence of

---

[8] *State v. Weso, supra* at 407–08; *Martin v. State,* 57 Wis.2d 499, 204 N.W.2d 499 (1973).

304

harm, and disregards the manner by which it is inflicted, a reasonable view of that evidence could fall short of the "great bodily harm" required by statute to convict for injury by conduct regardless of life.

*By the Court.*—Judgment and order affirmed.

