JACKSON, Plaintiff in error, v. STATE, Defendant in error.

*November 5—November 30, 1965.*

For the plaintiff in error there was a brief and oral argument by *Wayne E. Rowlee* of Milwaukee.

For the defendant in error the cause was argued by *David E. Leichtfuss,* first assistant district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette,* attorney general, and *Hugh R. O'Connell,* district attorney.

CURRIE, C. J. The issues presented on this writ of error are:

(1) Were defendant's constitutional rights violated by the means used by the police officers to gain admission to arrest her?

(2) Was the arrest valid?

(3) Was there an illegal search and seizure?

(4) Was there sufficient credible evidence to prove defendant guilty beyond a reasonable doubt?

*Means Used to Gain Admission and Validity of Arrest.*

The first two issues are so closely interrelated that they will be considered together. The arrest took place about 1 a. m. in the one-room apartment of one William Edwards. This apartment is located in a two-story frame building at 2228 North First Street in the city of Milwaukee, and is No. 1A in the first story of the building. The apartment has but one door which is the first one on the right as one enters the central hallway from the outside entrance. The building sits back about 15 feet from the public sidewalk, steps lead up to a porch, and the front entrance is gained from this porch.

Earlier in the evening Detectives Randa and Thelen of the vice squad of the Milwaukee police department read an entry in the department's daybook. This entry stated:

" 'Information from Charles Gumm. Billie Edwards, living at 2228 North 1st. Edwards' room is first to the right when you enter front door. A stairway to the left going upstairs has a room under there. This is all a community deal. Edwards gets his fix, etc. in the little room. He has to lay on his stomach to get it. Edwards is supposed to have a gun that Charlie wants real bad. Owner of home will cooperate for a plant or any other way. P. J. Hohlwick. Flagstone 5-6664 or Concord 4-2551.' "

Shortly before one o'clock these two officers went to 2228 North First Street. The front window of Edwards' apartment had an outside storm window. The inside

window was raised as was the window shade, and the curtains were parted. By standing on the second step of the stairway leading onto the porch one could look into the room either through a 12 by 2½ or 3-inch vent at the bottom of the storm window or through the glass above. One officer made his observations through both the vent and the glass while the other looked only through the window glass.

The officers observed Edwards clad only in his shorts lying on the bed reading a book. Defendant was clad in a "shorty" nightgown and was observed first sitting on a couch at the foot of the bed smoking a cigarette and then walking around the room. The officers recognized defendant whom they knew as being on parole as a result of conviction as a narcotics user. On December 4, 1964, the officers had seen defendant in a tavern in the company of Edwards and had warned her to part company with Edwards because he had a criminal record and associating with him might be a violation of her parole.

After observing the conduct of the parties for a few minutes the two officers entered the building through the front entrance and saw the door leading to Edwards' apartment. Randa went back to his observation post on the porch step and Thelen knocked on the apartment door. From his observation post Randa saw Edwards take off his shorts and get into bed. He testified he then saw defendant turn off the light and also get into bed. Officer Randa then entered the building, conferred with Thelen about no one answering Thelen's knock on the door, returned to the outside, and knocked on the window. He then saw Edwards turn on the light, put on pants, galoshes, a suit coat and overcoat, possibly a hat, and go to the apartment door. When Edwards opened the door he was told he was under arrest for encouraging violation of defendant's parole.[1]

---

[1] Encouraging violation of parole is made a criminal offense by sec. 946.46, Stats.

The officers entered the room and saw defendant standing in her nightgown and first declared she was under arrest for parole violation.[2] Fresh needle marks were observed on both her forearms and Randa said to her, "Your arms look pretty bad. It is bad enough to associate with Billie but to start using it again is real bad." He questioned her about use of narcotics and she admitted she had used heroin the preceding afternoon, December 14th. She stated that one Colden Hanks had then brought three packages of heroin to the apartment and Edwards, Hanks, and she had injected the heroin into their arms with a hypodermic needle. The officers then placed both her and Edwards under arrest for illegal use of heroin.

Upon these facts we determine that there was no violation of defendant's constitutional rights in either the observations made by the two officers preceding the arrest for illegal use of heroin or in the arrest itself without a warrant. As laid down in *Browne v. State* [3] the test to be applied to such police conduct is one of reasonableness.

The department logbook entry of information supplied by officer Gumm justified these two officers in going to the premises at 2228 North First Street. This entry apprised them of the location of Edwards' apartment in the building so that they knew that the window through which they looked from the step of the porch was that of his apartment. In making their observations through the window they did not invade any portion of the premises leased to Edwards. What they saw at once disclosed conduct on the part of Edwards which was a breach of the criminal laws of the state, viz., encouraging defendant to violate her parole. This justified the knocking

---

[2] This is not made a criminal offense by the Wisconsin statutes.

[3] (1964), 24 Wis. (2d) 491, 129 N. W. (2d) 175, 131 N. W. (2d) 169.

on the door and the placing of Edwards under arrest when he opened the door.

The act of the officers in stepping into the room through the open door after placing Edwards under arrest was conduct incidental to the arrest. Their observation of the fresh needle marks on defendant's forearms and their questioning her about them was also reasonable conduct in the line of duty. The admissions then made by defendant justified her arrest for illegal use of narcotics.

### Legality of Search and Seizure.

Both Edwards and defendant were placed under arrest for illegal use of heroin before the officers instituted their search of the premises. An open walk-in closet with no doors was in close proximity to where Edwards was standing or sitting when the officers commenced their search. Edwards stated, "Don't bother searching, I know what you really came here for, the gun," and reached into the closet and drew out a loaded 32-caliber revolver. The officers took this revolver from him and continued their search. Underneath some papers on the floor of this closet in a soiled, crumpled white envelope they found two eyedroppers, two hypodermic needle tips attached to the rubber bulbs of the eyedroppers, and a burned bottle cap with a wad of cotton in the center. Laboratory tests showed that the two eyedroppers with the rubber bulbs and hypodermic needle tips inserted in the bulbs contained traces of opium alkaloids. Heroin is an opium compound.

In *Browne v. State* [4] this court struck down Browne's contention that the search of his room for narcotics incident to his arrest was illegal, and declared:

"Under these circumstances 'probable cause to arrest' also supports a determination of probable cause to believe that evidence and instrumentalities of the crime are with-

[4] *Supra,* footnote 3.

in the immediate control of the person arrested. General police experience reveals that most illegal users of narcotics maintain either the drugs or the instrumentalities in use in their rooms, apartments, and homes. Therefore, a search pursuant to a valid arrest under these circumstances was reasonable." [5]

The United States supreme court has upheld similar searches in a number of cases.[6] That court has also held that the practicability of obtaining a warrant is not a controlling factor where the search is made incident to the arrest.[7]

We conclude that the search and seizure here were reasonable inasmuch as made incidental to the arrest and the open closet was under the immediate control of Edwards and defendant.

### Sufficiency of Evidence to Convict.

Defendant's contention, that there was insufficient credible evidence to establish beyond a reasonable doubt her guilt of the offense charged, is grounded on the basic principle that proof of commission of a crime cannot be grounded on the admissions or confession of the accused alone.

The principal evidence adduced of the offense consisted of the afore-stated admissions which defendant made to

---

[5] Id. pages 505, 506. Also see *State v. Camara* (1965), 28 Wis. (2d) 365, 375, 137 N. W. (2d) 1.

[6] *Harris v. United States* (1947), 331 U. S. 145, 67 Sup. Ct. 1098, 91 L. Ed. 1399 (search of entire four-room apartment incident to arrest for check forgery); *United States v. Rabinowitz* (1950), 339 U. S. 56, 70 Sup. Ct. 430, 94 L. Ed. 653 (search of entire office incident to arrest for stamp forgery); *Abel v. United States* (1960), 362 U. S. 217, 80 Sup. Ct. 683, 4 L. Ed. (2d) 668, rehearing denied, 362 U. S. 984, 80 Sup. Ct. 1056, 4 L. Ed. (2d) 1019 (search of a hotel room incident to administrative arrest for deportation).

[7] *Ker v. California* (1963), 374 U. S. 23, 41, 83 Sup. Ct. 1623, 10 L. Ed. (2d) 726; *United States v. Rabinowitz, supra,* footnote 6, page 66.

Officers Randa and Thelen when they questioned her about the fresh needle marks on her forearms. However, these needle marks, together with the laboratory report that traces of opium alkaloid were found on some of the seized paraphernalia, did supply sufficient corroborating evidence to sustain the conviction. As this court observed in *Holt v. State:* [8]

"All the elements of the crime do not have to be proved independently of an accused's confession; however, there must be some corroboration of the confession in order to support a conviction. Such corroboration is required in order to produce a confidence in the truth of the confession. The corroboration, however, can be far less than is necessary to establish the crime independently of the confession. If there is corroboration of any significant fact, that is sufficient under the Wisconsin test."

We have no hesitancy in holding that there was sufficient credible evidence upon which the trial court could find defendant guilty of the offense charged beyond a reasonable doubt.

*By the Court.*—Judgment affirmed.

[8] (1962), 17 Wis. (2d) 468, 480, 117 N. W. (2d) 626. See also *Barth v. State* (1965), 26 Wis. (2d) 466, 468, 132 N. W. (2d) 578.