STATE of Wisconsin,
Plaintiff-Respondent-Petitioner,

v.

Edward BANNISTER, Defendant-Appellant.

Supreme Court

*No. 2005AP767–CR. Oral argument January 11, 2007.*
*—Decided July 3, 2007.*

2007 WI 86

(Also reported in 734 N.W.2d 892.)

For the plaintiff-respondent-petitioner the cause was argued by *Christopher G. Wren,* assistant attorney general, with whom on the briefs was *Peggy A. Lautenschlager,* attorney general.

For the defendant-appellant there was a brief by *Craig S. Powell, Byron Lichstein,* and *Kohler & Hart, LLP,* Milwaukee, and oral argument by *Craig S. Powell.*

¶ 1. JON P. WILCOX, J. This is a review of a published court of appeals decision, *State v. Bannister,* 2006 WI App 136, 294 Wis. 2d 359, 720 N.W.2d 498. The court of appeals reversed a judgment of the Milwaukee County Circuit Court, John Siefert, Judge, and remanded the cause with directions. Judge Siefert entered a judgment of conviction consistent with the verdict of guilty reached by a jury. The jury found Edward Bannister (Bannister) guilty of delivery of a controlled substance pursuant to Wis. Stat. § 961.41(1)(a) (2005–06).[1]

¶ 2. This case presents two issues. First, did the State satisfy the corroboration rule during the course of Bannister's trial? We hold that the State satisfied the corroboration rule by corroborating Bannister's confession with the presence of morphine in Michael Wolk's body at the time of his death, which constitutes a significant fact. Second, should the court grant Bannister a new trial in the interest of justice pursuant to Wis. Stat. § 751.06?[2] We hold that the real controversy in this case was tried and do not grant Bannister a new trial. Accordingly, we reverse the court of appeals.

---

[1] Wisconsin Stat. § 961.41(1)(a) provides the following:

Schedule I and II narcotic drugs generally. Except as provided in par. (d), if a person violates this subsection with respect to a controlled substance included in schedule I or II which is a narcotic drug, or a controlled substance analog of a controlled substance included in schedule I or II which is a narcotic drug, the person is guilty of a Class E felony.

All subsequent references to the Wisconsin Statutes are to the 2005–06 version, unless otherwise stated.

[2] Wisconsin Stat. § 751.06 provides the following:

## I

¶ 3. On October 23, 2003, City of Cudahy Detective Michael Carchesi arrested Bannister at his home in Milwaukee County. Bannister had an open warrant with the Milwaukee County Sheriff's Department for failure to appear. Detective Carchesi wanted to discuss a case he was investigating that involved the suspicious death of Michael Wolk. Detective Carchesi and another officer transported Bannister to the police station.

¶ 4. The Cudahy Police Department's involvement in this case commenced when it dispatched Officer Brian Scott to the apartment of Michael Wolk and his wife on January 17, 2003. Mrs. Wolk had called 911 because her husband was unresponsive. She requested an ambulance.

¶ 5. Upon arrival, Emergency Medical Technicians (EMTs) attempted to revive Michael. After approximately twenty minutes, the EMTs gave up their efforts. Michael was pronounced dead on the scene.

¶ 6. The Milwaukee County Medical Examiner's Office was contacted. It went to the scene and took custody of Michael's body. The Medical Examiner also took other evidence, including a kitchen spoon, a white powdery substance, a couple of syringes, and rolling papers that were found on a table near Michael's body.

---

In an appeal in the supreme court, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record, and may direct the entry of the proper judgment or remit the case to the trial court for the entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

¶ 7. The Medical Examiner's Office examined the evidence collected. Its examination included a comprehensive toxicology screen on the kitchen spoon and syringes. Morphine was on both the spoon and the syringes. Morphine was also found in Michael's blood when a comprehensive screen on his blood was done. Dr. Jeffrey Jentzen, a Milwaukee County Medical Examiner, concluded that Michael died of morphine toxicity.

¶ 8. With Michael's death, the police began an investigation. At the outset of the investigation, Detective Carchesi interviewed Steven Wolk on two occasions. Steven was Michael's brother. Steven identified Bannister as their source for morphine.

¶ 9. Detective Carchesi called Bannister and asked him to come to the police station the following day. Bannister initially agreed to do so, but the following day he called back and explained he could not meet with them. No immediate action was taken by the Cudahy Police Department to interview Bannister, but the investigation continued.

¶ 10. It was eight months after requesting that Bannister appear at the police station that Detective Carchesi went to Bannister's residence and arrested him. Once Bannister and Detective Carchesi arrived at the police station, Detective Carchesi advised Bannister of his constitutional rights. Detective Carchesi also told Bannister that he was investigating the death of Michael Wolk.

¶ 11. During the interview, Bannister told Detective Carchesi that he knew Steven and Michael Wolk. The brothers stopped by his residence on several occasions for morphine. Bannister explained that he was prescribed morphine for his sickle cell anemia. Bannister told Detective Carchesi that he did not receive

payment for the morphine. Bannister stated that he first gave the Wolks morphine in December 2002. He continued giving them morphine until mid-January 2003. Bannister told Detective Carchesi that he gave the Wolks morphine on eight to ten occasions, approximately every three days.

¶ 12. After interviewing Bannister, Detective Carchesi booked him for delivery of a controlled substance. The State subsequently charged Bannister with one count of delivery of a controlled substance.

¶ 13. On the day Bannister's trial began, the parties reached an agreement. The State agreed to not charge Bannister with reckless homicide. In exchange, Bannister agreed to not object to evidence that an autopsy was done upon Michael Wolk and that morphine was found in his body at the time of his death.

¶ 14. After the selection of the jury, the court held a *Miranda-Goodchild* hearing.[3] Detective Carchesi testified about the information he provided Bannister regarding his constitutional rights and Bannister's reaction. The circuit court concluded that *Miranda*[4] was complied with and Bannister's statement was given voluntarily. The circuit court denied Bannister's motion to suppress his statement given to Detective Carchesi.

¶ 15. During the State's opening statement, it summarized the evidence that would be presented at trial. The summary included reference to testimony from Steven Wolk. The State stated the following related to Steven Wolk's testimony:

> I'm asking, for instance, if Steven should testify, you listen to him and you weigh his evidence and you

[3] *State ex rel. Goodchild v. Burke,* 27 Wis. 2d 244, 133 N.W.2d 753 (1965).

[4] *Miranda v. Arizona,* 384 U.S. 436 (1966).

weigh his credibility. It'll be out there for you. You may find he's a distasteful individual. He's a drug user. His brother was a drug user. Drugs killed his brother. You'll hear—it'll be clear that Steven Wolk isn't the nicest person in the world but he's a witness to what happened.

He'll tell you that over a span of time, that he and his brother, together with Steven, would obtain morphine from the defendant, Edward Bannister. It went on for about a year. They would go to Edward Bannister's home and obtain it. Sometimes, Edward Bannister would give it to him, according to Steven. I don't know if that's true—but one thing, you have to weigh everything—would give it to him free of charge. Sometimes, he'd give him good faith money. That on or about the 14th or 15th of January, he can't remember the exact day, sometime in late morning or early afternoon, Steven Wolk, Michael Wolk went to the defendant's home and the defendant gave them two tablets of morphine, that they in turn gave the defendant $20.00 in exchange for that, and that Steven took one pill and Michael took another one of the pills so that they could use it at a later date or later time.

Steven Wolk never testified during the trial. He asserted his Fifth Amendment privilege against self-incrimination.

¶ 16. The State called four other witnesses during the trial. Officer Scott testified regarding the scene at Michael Wolk's apartment when he responded to Mrs. Wolk's 911 call. Susan Gock, Technical Director of the Milwaukee County Toxicology Lab, testified about the findings of the Medical Examiner's Office. Detective Carchesi testified regarding the investigation into Michael's death and the statement made by Bannister when he interviewed him. Finally, Dr. Jentzen testified about the autopsy conducted on Michael. Dr. Jentzen testified that Michael died of morphine toxicity.

¶ 17. Bannister rested his case without calling any witnesses. The jury returned a verdict of guilty. The circuit court entered a judgment of conviction consistent with the jury's verdict.

¶ 18. Bannister appealed to the court of appeals. He contended that the State's failure to corroborate his confession with a significant fact meant that insufficient evidence was presented to convict him. He also argued that he was entitled to a discretionary reversal pursuant to Wis. Stat. § 752.35.[5]

¶ 19. On the issue related to the corroboration of Bannister's confession, the court of appeals reversed the judgment the circuit judge entered. The court of appeals concluded that the presence of morphine in Michael's body did not constitute a corroboration of a significant fact. *Bannister,* 294 Wis. 2d 359, ¶ 8. Noting that no case law specifically defined "significant fact," the court of appeals relied on the dictionary definition of "significant." *Id.,* ¶ 9. "Significant" means "having or likely to have influence or effect: important." *Id.* (quoting *Webster's Ninth New Collegiate Dictionary* 1096 (1991)). Based on the evidence presented at trial, the court of appeals concluded that the finding of morphine in Michael's body was "not sufficient to corroborate

_____

[5] Wisconsin Stat. § 752.35 provides the following:

**Discretionary reversal.** In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

Bannister's confession claiming to have given morphine pills on prior uncertain dates to the deceased." *Id.,* ¶ 11.

¶ 20. Pursuant to *Gross v. Hoffman,* 227 Wis. 296, 300, 277 N.W. 663 (1938), which established that only dispositive issues need to be addressed on appeal, the court of appeals did not address Bannister's argument that he was entitled to a discretionary reversal.

¶ 21. The State petitioned this court for review of the judgment of the court of appeals.

## II

¶ 22. We first address whether the State satisfied the corroboration rule during the course of Bannister's trial. The corroboration rule is a common-law standard. *State v. Hauk,* 2002 WI App 226, ¶ 20, 257 Wis. 2d 579, 652 N.W.2d 393. Determining if the facts fulfill a common-law standard presents a question of law. *Peplinski v. Fobe's Roofing, Inc.,* 193 Wis. 2d 6, 18, 531 N.W.2d 597 (1995). We view the facts in evidence in a light most favorable to the jury's verdict. *See State v. Poellinger,* 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990).

¶ 23. The corroboration rule ensures that a conviction does not stand when there is an absence of any evidence independent of the defendant's confession that the crime in fact occurred. *Holt v. State,* 17 Wis. 2d 468, 480, 117 N.W.2d 626 (1962). The corroboration rule functions as a "restriction on the power of the jury to convict." *Smith v. United States,* 348 U.S. 147, 153 (1954). A conviction will not stand on the basis of a defendant's confession alone. *State v. Verhasselt,* 83 Wis. 2d 647, 661, 266 N.W.2d 342 (1978).

¶ 24. The development of the corroboration rule commenced in 1660s England. Richard A. Leo et al.,

*Bringing Reliability Back in: False Confessions and Legal Safeguards in the Twenty-First Century,* 2006 Wis. L. Rev. 479, 502 (2006) (discussing the roots of the corroboration rule). *Perry's Case,* 14 Howell St. Tr. 1312 (1660), presented a case where three people were executed for a suspected murder. The convictions were based upon the discovery of a missing person's bloody hat and the confession of one of the defendants. The confessor implicated his brother and mother. Years after the defendants' executions, the missing man reappeared. He was alive. The corroboration rule addressed such cases by requiring evidence that the crime actually occurred, independent of a defendant's confession.

¶ 25. Wisconsin has been applying the corroboration rule for over 135 years. *See Griswold v. State,* 24 Wis. 144 (1869). Throughout that time, the State has had to present some evidence that the crime charged actually occurred, independent of the defendant's confession. In *Griswold,* the court discussed the threshold for satisfying the corroboration rule in terms of the State presenting evidence that corroborated the confession "in some particulars." *Id.* at 147.

■

¶ 26. The present phrasing of the corroboration rule test requires that the State corroborate "any significant fact." In explaining the test, the court stated the following:

> All the elements of the crime do not have to be proved independently of an accused's confession; however, there must be some corroboration of the confession in order to support a conviction. Such corroboration is required in order to produce a confidence in the truth of the confession. The corroboration, however, can be far less than is necessary to establish the crime

independently of the confession. If there is corroboration of any significant fact, that is sufficient under the Wisconsin test.

*Holt,* 17 Wis. 2d at 480. A significant fact has been corroborated when there is confidence in that the fact that the crime the defendant has confessed to indeed occurred.

¶ 27. Prior cases applying the corroboration rule test have established the contours of a significant fact, even though the court has not explicitly defined the term "significant fact." For instance, a significant fact need not independently establish the specific elements of a crime. *Id.* In *Holt,* the defendant was charged with murder in the first degree. She contended that the State had failed to present sufficient evidence to corroborate her confession because it failed to prove that her baby was alive when it was placed in the furnace. The court concluded that the corroboration rule did not require that the evidence corroborate any particular aspect of her confession, such as her statement that the baby was alive when she placed it in the furnace. "If there is corroboration of *any* significant fact, that is sufficient under the Wisconsin test." *Id.* (emphasis added).

¶ 28. *Jackson v. State,* 29 Wis. 2d 225, 138 N.W.2d 260 (1965), also illustrates that the significant fact need not independently establish a specific element of a crime. In *Jackson,* the defendant was convicted for using heroin. During her arrest, she had admitted that she used heroin. The court noted that "needle marks, together with the laboratory report that traces of opium alkaloid were found on some of the seized paraphernalia, did supply sufficient corroborating evidence to sustain the conviction." *Id.* at 231–32. The needle marks and laboratory report alone would not establish that the

defendant actually used heroin. Nevertheless, that evidence sufficiently corroborated her confession.

¶ 29. There may be many significant facts in a record, but any one of them satisfies the corroboration rule. *Holt,* 17 Wis. 2d at 480. The *Holt* statement of the corroboration rule test itself states that the corroboration of "any significant fact" is sufficient. The application of the test also supports that proposition. In *Triplett v. State,* 65 Wis. 2d 365, 372, 222 N.W.2d 689 (1974), the court noted one significant fact that was itself sufficient, before it provided a list of other significant facts. Although the record in some cases have presented multiple significant facts, *see also, Verhasselt,* 83 Wis. 2d at 662, the test requires only one significant fact to be corroborated for it to be satisfied.

¶ 30. It is also unnecessary that the significant fact be particular enough to independently link the defendant to the crime. *State v. DeHart,* 242 Wis. 562, 566, 8 N.W.2d 360 (1943). In *DeHart,* the defendant confessed to being a party to a murder and robbery. Specifically, he told authorities that he was not inside when the shooting occurred, but he stayed outside to keep watch. The court stated that "evidence as to the location and condition of the body, and expert testimony that the condition of the bones was consistent with buckshot wounds inflicted at close range, sufficiently corroborated the confession." *Id.* None of the corroborating evidence specifically related to DeHart's role in the crime. Rather, the corroborating evidence permits confidence in that the fact that the crime DeHart confessed to indeed occurred.

¶ 31. A significant fact is one that gives confidence that the crime the defendant confessed to actu-

ally occur. A significant fact need not either independently establish the specific elements of the crime or independently link the defendant to the crime. Rather, the State must present at least one significant fact that gives confidence that the crime the defendant has been convicted of actually did occur.

¶ 32. When a court addresses a defendant's claim that his or her confession was insufficiently corroborated, it examines the sufficiency of evidence presented at trial. *Schultz v. State,* 82 Wis. 2d 737, 753, 264 N.W.2d 245 (1978)(stating that "[o]ther evidence adduced at trial corroborated the defendant's version of the events"); *Barth v. State,* 26 Wis. 2d 466, 468, 132 N.W.2d 578 (1965)(stating that "[w]e have carefully scrutinized the testimony in this case and particularly the portion . . . relied upon by the state"); *DeHart,* 242 Wis. at 566 (stating that "evidence as to the location and condition of the body, and expert testimony that the condition of the bones was consistent with buckshot wounds inflicted at close range, sufficiently corroborated the confession"); *Griswold,* 24 Wis. at 147 (stating that "[a]side from his confessions given in evidence against the plaintiff in error, there was other testimony, which was direct, going to establish his guilt"). Because courts consider the corroboration rule after a jury verdict, the evidence is viewed in a light most favorable to the verdict. *See State v. Poellinger,* 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990).

¶ 33. The State contends that the court should classify the corroboration rule as a rule of admissibility, rather than as one of evidentiary sufficiency. Given that the corroboration rule functions to ensure a jury has not convicted a defendant on his or her confession

alone, the continued treatment of it as a rule of evidentiary sufficiency is warranted.

¶ 34. In this case, the evidence of morphine being present in Michael Wolk's body at the time of his death constitutes a significant fact. The presence of morphine is evidence of the fact that Michael used morphine. That fact corroborates Bannister's confession that he delivered morphine between December 2002 and mid-January 2003 to the Wolks because it gives confidence that he in fact gave the Wolks morphine.

¶ 35. Michael's death does not make the fact significant for the purpose of corroboration. Rather, the circumstances of the case, with Michael dying in his apartment, preserved the fact that he used morphine. Had Michael lived, like his brother Steven, and the morphine had gone through his system, the means of corroboration would not have been available. It is the fact that circumstances permitted the morphine to be documented as being in Michael's body, rather than his death itself, that makes the presence of the morphine a significant fact that corroborates Bannister's confession.

¶ 36. Bannister contends that a significant fact must be a more meaningful and particularized fact. In supporting his contention, Bannister points out that both his own confession and the State's corroborative evidence lacks detail. He proffers that had details of the delivery of the morphine been part of the confession or corroborative evidence, his conviction might have been sustainable.

¶ 37. Adopting such a definition of significant fact would deviate from Wisconsin's well-established test for corroboration. Rather than permitting "any significant

fact," or "some particulars," Bannister's proposed definition would require that the right or proper fact within the confession be corroborated. Requiring that specific aspects of the confession be corroborated, would require this court to abandon its test and adopt the one adopted in other jurisdictions. This court has repeatedly rejected the approaches of other jurisdictions when it comes to the corroboration rule. *See Schultz,* 82 Wis. 2d at 752–53.

¶ 38. The State presented evidence that Michael Wolk used morphine. That fact was significant because it gave confidence that Bannister delivered morphine to the Wolks. Accordingly, the State satisfied the corroboration rule.

### III

¶ 39. Having concluded that the State satisfied the corroboration rule, we now address whether Bannister should be granted a new trial in the interest of justice.

¶ 40. This court has both inherent and statutory power to review waived errors. *Vollmer v. Luety,* 156 Wis. 2d 1, 11–12, 456 N.W.2d 797 (1990). Wisconsin Stat. § 751.06 provides the following:

> **Discretionary reversal.** In an appeal in the supreme court, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record, and may direct the entry of the proper judgment or remit the case to the trial court for the entry of the proper judgment or for a

new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

Pursuant to § 751.06, the court may exercise its discretion when either the real controversy has not been tried or it is probable that there has been a miscarriage of justice. In this case, Bannister contends that the real controversy was not tried because of the presentation of evidence related to Michael Wolk's death and the prejudicial statements made by the State.

¶ 41. The court has exercised its power to reverse when the real controversy has not been fully tried in many different situations. *Vollmer,* 156 Wis. 2d at 19. The court has exercised the power when important evidence was kept from the jury. *State v. Cuyler,* 110 Wis. 2d 133, 142–43, 327 N.W.2d 662 (1983). It has also exercised the power when evidence presented to the jury should have been excluded. *State v. Penigar,* 139 Wis. 2d 569, 578, 408 N.W.2d 28 (1987). The court has also exercised its power when it concluded there was an error in a jury instruction, *Air Wisconsin, Inc. v. North Cent. Airlines, Inc.,* 98 Wis. 2d 301, 318, 296 N.W.2d 749 (1980), and an error in a verdict question, *Clark v. Leisure Vehicles, Inc.,* 96 Wis. 2d 607, 616, 292 N.W.2d 630 (1980). An insufficient record, *Bostonian Homes, Inc. v. Struck,* 44 Wis. 2d 553, 559–60, 171 N.W.2d 320 (1969), and an incomplete record, *Walter v. Four Wheel Drive Auto Co.,* 213 Wis. 559, 572, 252 N.W. 346 (1934), also caused the court to conclude that the real controversy had not been tried. The court has a broad discretion to reverse judgments, which "enables it to achieve justice in individual cases." *Vollmer,* 156 Wis. 2d at 21.

¶ 42. Although the court has exercised its power of discretionary reversal in numerous different situa-

175

tions, it does so only in exceptional cases. *Id.* The long-established general rule is that an appellate court does not review an error unless it has been properly preserved. *Cappon v. O'Day*, 165 Wis. 486, 490, 162 N.W. 655 (1917). We have recognized some of the many reasons for the general rule. *Vollmer*, 156 Wis. 2d at 10–11. It gives attorneys an incentive to diligently try the case at trial because of the threat of waiver. It emphasizes the need for objections, which brings an issue to the judge's attention and allows him or her to correct errors. When trial judges take the opportunity to correct an error, the general rule functions to reduce the need for appeals. The general rule also preserves for the court of appeals the role of corrector of errors actually made by trial courts, rather than addressing issues not even raised in the trial court.

¶ 43. Bannister's case does not present an exceptional circumstance. A jury returned a verdict of guilt after the real controversy had been tried. The State's mention of Steven Wolk's testimony and evidence related to Michael Wolk did not cloud the real controversy to the extent that the interest of justice warrants a new trial.

¶ 44. Bannister contends the real controversy (i.e., whether Bannister delivered morphine to the Wolks) was not fully tried. Specifically, he contends that the following items prevented the jury from deciding the real controversy: the State's reference to Steven Wolk's anticipated testimony during its opening statement, its presentation of evidence related to Michael's death, and its characterization of Bannister's initial failure to appear at the Cudahy Police Department to be interviewed.

¶ 45. The State did discuss the anticipated testimony of Steven Wolk during its opening statement. It stated the following:

> I'm asking, for instance, if Steven should testify, you listen to him and you weigh his evidence and you weigh his credibility. It'll be out there for you. You may find he's a distasteful individual. He's a drug user. His brother was a drug user. Drugs killed his brother. You'll hear—it'll be clear that Steven Wolk isn't the nicest person in the world but he's a witness to what happened.
>
> He'll tell you that over a span of time, that he and his brother, together with Steven, would obtain morphine from the defendant, Edward Bannister. It went on for about a year. They would go to Edward Bannister's home and obtain it. Sometimes, Edward Bannister would give it to him, according to Steven. I don't know if that's true—but one thing, you have to weigh everything—would give it to him free of charge. Sometimes, he'd give him good faith money. That on the 14th or 15th of January, he can't remember the exact day, sometime in late morning or early afternoon, Steven Wolk, Michael Wolk went to the defendant's home and the defendant gave them two tablets of morphine, that they in turn gave the defendant $20.00 in exchange for that, and that Steven took one pill and Michael took another one of the pills so that they could use it at a later date or later time.

Bannister stresses the State's prefacing of its summary of Steven's anticipated testimony with "if Steven should testify" manifests its suspicion that Steven would not be testifying. With such a suspicion, the argument goes, the State should not have summarized Steven's anticipated testimony. Bannister contends that this aspect of the State's opening statement is even more troubling

because the circuit court denied his motion to point out to the jury the fact that Steven did not testify.

¶ 46. The State's discussion about Steven Wolk's testimony did not prevent the real controversy from being tried. The jury received an instruction that the statements of the attorneys were not evidence. The limiting instruction means that the jury did not consider the State's statement about Steven Wolk's potential testimony. Finding that the State's reference to Steven's testimony clouded the real controversy would imply that the limiting instruction that the trial court provided the jury had no effect. That is not an implication consistent with how limiting instructions generally are treated. *See State v. Fawcett,* 145 Wis. 2d 244, 257, 426 N.W.2d 91 (Ct. App. 1988).

¶ 47. The jury also repeatedly heard references to the death of Michael Wolk. This included testimony by all of the State's witnesses that mentioned Michael's death in one way or another. In addition to the evidence presented to the jury, the State mentioned in its opening statement that Mrs. Wolk found her husband Michael dead from an overdose.

¶ 48. The statements related to Michael Wolk's death did not cause the true controversy to not be tried. The relevancy of the testimony that mentioned Michael's death was that it related to his use of morphine. The Medical Examiner's Office found it was in Michael's blood. It also found morphine on the syringes and kitchen spoon. The occurrence of Michael's overdose captured evidence that he had used morphine. Evidence of Michael's morphine use, which was established with the testimony about the findings of the Medical Examiner's Office, related to the State's theory that Bannister delivered morphine to the Wolks. Ban-

nister himself even entered into an agreement that permitted the admission of the evidence.

¶ 49. The jury also heard testimony regarding the circumstances surrounding Detective Carchesi ordering Bannister to appear at the police department for an interview. Bannister contends that the State mischaracterized his failure to appear at the police department. Specifically, Bannister argues the State did the following inappropriate redirect examination of Detective Carchesi:

Q: On February 17, 2003, you talked to the defendant, correct?

A: Yes sir.

Q: And you told him to come into the Cudahy Police Department on February 18, 2003?

A: Yes sir.

Q: And he never did come in, did he?

A: No, he did not.

Bannister argues that the only purpose for the redirect examination was to emphasize to the jury Bannister's failure to appear.

¶ 50. The testimony regarding Bannister's failure to appear at the Cudahy Police Department did not keep the jury from deciding the real controversy. The matter does not rise to the level that we need to exercise our power of discretionary reversal.

¶ 51. The State's reference to Steven Wolk's anticipated testimony, presentation of evidence related to Michael Wolk's death, and characterization of

Bannister's failure to appear did not prevent the real controversy to be tried. Accordingly, we decline to exercise our power to grant Bannister a new trial.

## IV

¶ 52. This case presented two issues. First, did the State satisfy the corroboration rule during the course of Bannister's trial? We hold that the State satisfied the corroboration rule by corroborating Bannister's confession with the presence of morphine in Michael Wolk's body at the time of his death, which constitutes a significant fact. Second, should the court grant Bannister a new trial in the interest of justice pursuant to Wis. Stat. § 751.06? We hold that the real controversy in this case was tried and do not grant Bannister a new trial. Accordingly, we reverse the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed, and we affirm the conviction.

¶ 53. LOUIS B. BUTLER, JR., J. (*dissenting*). The majority concludes that Edward Bannister should not be granted a new trial in the interest of justice upon his conviction for delivery of a controlled substance, morphine, where jurors heard evidence concerning Michael Wolk's death by morphine overdose, and where the prosecutor threatened to charge Bannister with reckless homicide in the death of Michael Wolk in order to secure Bannister's agreement not to object at trial to the admission of evidence relating to Michael Wolk's death. Because the evidence of Michael Wolk's death was highly prejudicial in nature, and the means by which the prosecutor secured admission of this evidence were questionable at best, I conclude that Ban-

nister should be granted a new trial in the interest of justice. Accordingly, I respectfully dissent.

¶ 54. On the morning of Bannister's jury trial, off-the-record discussions between the parties and the court left the prosecutor with the impression that the court believed that evidence about the death of Michael Wolk would be unduly prejudicial on a delivery of controlled substance charge. The prosecutor argued that he needed the evidence of Michael Wolk's death to corroborate Bannister's confession and prove the delivery charge. The prosecution notified the court that it would be prepared to file an amended information charging Bannister with first-degree reckless homicide unless Bannister agreed not to object to evidence of Michael Wolk's death during the trial on the delivery charge. Bannister chose not to object to that evidence, and the charge was not amended.

¶ 55. The prosecution referred to Michael Wolk's death during its opening statement. "Drugs killed [Steven Wolk's] brother." The State called four witnesses, each of whom testified to various aspects of Michael Wolk's death, including the autopsy results and cause of death. Other than Bannister's confession, no testimony regarding any delivery was offered into evidence.

¶ 56. Evidence of the morphine found in Michael Wolk's blood may have been relevant to establishing corroboration of Bannister's confession in order to prove the delivery charge. Majority op., ¶ 34. Evidence of Michael Wolk's death, on the other hand, was irrelevant to the delivery charge, and was highly prejudicial. Majority op., ¶ 35 ("Michael's death does not make the fact significant for the purpose of corroboration."). It should have been excluded pursuant to Wis. Stat. § (Rule) 904.02 ("Evidence which is not relevant is not admissible.").

181

¶ 57. The majority suggests that testimony regarding Michael's death was relevant because it related to his use of morphine, and that Michael's morphine use was relevant to the delivery charge. Majority op., ¶ 48. I do not dispute that Michael's morphine use may have been relevant in this case. Michael's death, however, was not. Moreover, that evidence was entirely unnecessary and highly prejudicial. As Judge Fine noted in his concurrence, "the solution was to ask for an agreement that Michael Wolk possessed morphine in mid-January 2003 without telling the jury that he died as a result." *State v. Bannister,* 2006 WI App 136, ¶ 16, 294 Wis. 2d 359, 720 N.W.2d 498, (Fine, J., concurring).

¶ 58. I recognize that this is a dissenting opinion. Thus, while I strongly disagree that the evidence relating to Michael's death was relevant, for purposes of this discussion, I will assume its relevancy. Nevertheless, we still have a big problem. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Wis. Stat. § (Rule) 904.03. "Evidence is prejudicial if it has a tendency to influence the outcome by improper means or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case." *State v. Jackson,* 216 Wis. 2d 646, 667, 575 N.W.2d 475 (1998) (citations omitted). Judge Fine correctly observes that "[w]aving the 'bloody shirt' of Wolk's overdose death invited—in the most blatant way—the jury to consider the evidence as proving that, beyond the delivery-charge, Bannister was also guilty of homicide." *Bannister,* 294 Wis. 2d 359, ¶ 16 (Fine, J., concurring). The state's case clearly appealed to the jury's sympathies, aroused its sense of horror, provoked its

instincts to punish, and caused the jury to base its decision on the fact that Michael Wolk is dead.

¶ 59. If it appears from the record that the real controversy has not been fully tried, we may reverse the judgment and order a new trial, as necessary to accomplish the ends of justice. Wis. Stat. § 751.06. When the real controversy has not been tried, we may use our power of discretionary reversal without first finding a probability of a different result on retrial. *Vollmer v. Luety,* 156 Wis. 2d 1, 19, 456 N.W.2d 797 (1990). We have used this power to reverse judgments, after concluding that the real controversy was not tried, because the jury had before it evidence which should have been excluded. *Id.* at 20 (citing *Logan v. State,* 43 Wis. 2d 128, 137, 168 N.W.2d 171 (1969); *State v. Penigar,* 139 Wis. 2d 569, 578, 408 N.W.2d 28 (1987)). That is precisely the situation we are presented with here.

¶ 60. Before the trial, the prosecutor told Bannister's attorney that the State did not believe it had sufficient evidence to prove a reckless homicide charge. Yet, the prosecutor was prepared to file an amended charge for first-degree reckless homicide unless Bannister agreed to withdraw his objection to allowing evidence concerning Michael Wolk's death during the trial on the delivery of controlled substance charge. Judge Fine got it right when he opined:

> If the prosecutor believed he could prove that Bannister had given Michael Wolk the morphine that caused Michael Wolk's death, he should have stayed with the first-degree-reckless-homicide charge and let the jury decide Bannister's guilt or innocence on that charge. If the prosecutor did not believe that he could prove that Bannister had given Michael Wolk the morphine that caused Michael Wolk's death, then his back-door use of the death-evidence was improper.

183

*Bannister,* 294 Wis. 2d 359, ¶ 24 (Fine, J., concurring). I wholeheartedly agree. Evidence suggesting that Bannister provided Wolk with the drugs that killed him should not have been heard by the jury during a drug trial.

¶ 61. In my view, Bannister has not received a fair trial. The real controversy, delivery of controlled substances, has not been fully tried. Taking into account Bannister's confession that he had given Michel Wolk some morphine, the evidence regarding Michael Wolk's death clearly appealed to the jury's sympathies, aroused its sense of horror, provoked its instincts to punish, and caused the jury to base its decision on the fact that Michael Wolk is dead and the drugs Bannister gave Michael Wolk may have killed him. Under these circumstances, I would invoke our power of discretionary reversal pursuant to Wis. Stat. § 751.06, and order a new trial.

¶ 62. For the foregoing reasons, I respectfully dissent.

¶ 63. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissenting opinion.