COURT OF APPEALS
DECISION
DATED AND FILED

October 24, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP641-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF3410

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

EMANUEL TERRELL HARPER,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: DANIELLE L. SHELTON, Judge. *Affirmed*.

Before White, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Emanuel Harper appeals his convictions for one count of felon in possession of a firearm and two counts of felony bail jumping. On appeal, Harper contends that the State failed to present sufficient evidence during his jury trial to corroborate his confession to possessing a firearm. For the reasons discussed below, we reject Harper's argument and affirm.

## BACKGROUND

¶2 Harper was initially charged with first-degree reckless homicide, with use of a dangerous weapon; possession of a firearm by a felon; and two counts of felony bail jumping. Later, the first-degree reckless homicide charge was amended to first-degree intentional homicide, with use of a dangerous weapon.

¶3 According to the criminal complaint, on June 19, 2017, a man was shot in a gas station parking lot at 6325 North 76th Street in Milwaukee, and subsequently died. In the gas station lot, police found a tan baseball cap and several spent .40 caliber casings, which were determined to all come from the same gun. Police also observed two dried blood droplets on the surface of the parking lot. DNA analysis showed a link between the genetic profile of the blood droplets and Harper's DNA. DNA analysis also showed that the genetic profile of the major male contributor on the baseball cap matched the genetic profile of the blood droplets.

¶4 On December 14, 2017, at a status conference, the State indicated that it was unable to locate a material witness for the homicide charge. As a result, on Harper's motion, the trial court dismissed the homicide charge without prejudice.

¶5      Subsequently, the State sought to join this case with two other cases, Milwaukee County Circuit Court Case Nos. 2017CF1090 and 2017CF1412.  At a hearing on the motion, the trial court expressed concern that joining this case with the other two cases would unfairly prejudice Harper.  The State then withdrew the motion in regards to this case.

¶6      Two months later, the State renewed its motion to join all three cases.  During its argument, the State indicated that it would not present evidence during trial that a person was shot.  Based on this representation, Harper agreed to joinder.  The State then clarified that it still intended "to present that a casing was recovered … [s]o there will be evidence that a firearm was shot, however … any injuries to a victim, that I am happy to side step."  Under this circumstance, the trial court granted the State's motion and joined all three cases for trial.  The court stated that "any reference to the injuries, the death, the shooting of a person or anything of that nature is excluded from the trial and prohibited to be introduced."

¶7      On February 1, 2021, Harper proceeded to trial solely on this case.[1] Harper represented himself with the assistance of standby counsel.  The parties stipulated that on June 19, 2017, Harper was convicted of a felony and was not permitted to possess a firearm.  In addition, the parties stipulated that on June 19, 2017, Harper was out-of-custody and subject to conditions of release on bond on two separate felony cases, that the condition of release on bond for each case was that Harper not possess any firearms, and Harper knew as a condition of his release on the bonds that he was not to possess any firearms.

---

[1] Prior to trial, Milwaukee County Circuit Court Case No. 2017CF1090 was severed. Additionally, on the morning of trial, Milwaukee County Circuit Court Case No. 2017CF1412 was dismissed without prejudice due to a missing State witness.

¶8      During the trial, the State presented testimony from several witnesses. Lieutenant Keith Kopcha testified that he conducted a ***Mirandized***[2] interview of Harper. During the interview, Harper told Lieutenant Kopcha that he was familiar with the North 76th Street gas station and frequented it on a regular basis—sometimes up to five times in a single day.

¶9      In particular, on June 19, 2017, Harper was at the gas station twice. On one occasion, at around 5:00 p.m., Harper said that "[i]nside the gas station he observed an unknown subject of [sic] a firearm. He … observed a magazine sticking out of the firearm and the guy had it in his possession on his person[.]" Harper "grabbed the gun and took it from the guy and then that individual that he took the gun from had run out of the store and got into a Monte Carlo and left." Harper described the gun as "a large black semiautomatic pistol" and "speculated it was a nine millimeter, but he didn't know for sure."

¶10     Harper said he returned to the gas station a second time that day at approximately 10:00 p.m. to 11:00 p.m. Harper confirmed that at that time he was still in possession of the firearm that he had taken earlier. After about an hour, Harper left the gas station. Later that evening, as Harper was driving to Chicago, he "dismantled the gun and threw it out the window." Harper also said he had been wearing a tan baseball cap on the night of the incident.

¶11     Lieutenant Kopcha testified that during the interview, Harper denied that he was under the influence of any drugs or alcohol. According to Lieutenant Kopcha, all of Harper's answers "were appropriate" and "he did not appear to be

---

[2] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

in any type [of] distress or anything of that nature during the interview." Lieutenant Kopcha further testified that to his knowledge, no witnesses confirmed or reported that a firearm had been stolen.

¶12 The State also called Detective Michael Fedel. Detective Fedel testified that on June 19, 2017, he responded to the gas station to conduct a scene investigation. In the gas station parking lot, Detective Fedel found a tan baseball cap and several spent shell casings. The cap and shell casings were later sent to the crime lab for testing.

¶13 Detective Fedel additionally told the jury that he reviewed the surveillance footage from the gas station.[3] The footage showed Harper entering the store, buying a bottle of soda, paying for his purchase, and then walking out. Detective Fedel "[c]ouldn't] say for sure if [he] saw" anyone inside the store on the surveillance video possessing a firearm. He also testified that he never saw Harper possessing a firearm, nor was he aware of any witnesses who saw Harper with a firearm.

¶14 In addition, the State called two laboratory analysts. Heather Williams, a firearm and tool mark examiner with the Wisconsin State Crime Laboratory, testified that she examined seven fired shell casings. Williams stated that the casings were .40 caliber, and all had been fired from the same firearm.

¶15 The second analyst the State called was Sharon Polakowski, a forensic scientist who works in the DNA unit of the Wisconsin State Crime Laboratory. Polakowski testified that she swabbed various parts of the baseball

---

[3] The surveillance footage was not played for the jury or introduced as an exhibit.

cap that had been found at the scene and developed two DNA profiles. Polakowski stated that the profiles "were mixtures consistent with two individuals." One component came from a "major contributor," which meant that "there [was] more DNA from one person than the other" and was "suitable to be used for inclusionary purposes." The other was a "minor component." Polakowski opined that Harper was the source of the major component of the DNA found on the baseball cap.

¶16 At the close of the State's case, Harper moved for a judgment of acquittal, arguing that there was insufficient evidence that he possessed a firearm. The State responded by arguing that Harper's confession alone was enough for the State to meet its burden. The State further argued that the stipulations, Harper's DNA on the baseball cap,[4] and the shell casings corroborated Harper's confession. In regards to the shell casings, the State asserted that the shell casings:

> don't stand for the proposition that the defendant was directly responsible for putting those casings there, or firing a gun. There wasn't any evidence along those lines.
>
> You know, it just so happens that we all know [Harper] did that, because that was, also, part of the confession, but we kept that out of [the] case, in accordance with our agreement. But the casings are probative, because they tend to show that a firearm was, in fact, there on the date in question.

¶17 The trial court denied Harper's motion and concluded that there was sufficient evidence to allow the case to go to the jury for a determination of guilt or innocence.

---

[4] We note that the State also argued that Detective Fedel testified that he observed Harper on the surveillance video wearing the baseball cap. Detective Fedel's testimony, however, does not indicate that he saw Harper on the surveillance video wearing the baseball cap.

¶18     In closing argument, the State argued to the jury that the "chief piece of evidence" was Harper's confession to the crime. The State also argued that Harper's confession was corroborated in three ways: (1) Detective Fedel testified that he saw Harper entering the gas station and buying a soda;[5] (2) a baseball cap was discovered at the scene and linked by DNA evidence to Harper; and (3) several .40 caliber shell casings from the same firearm were recovered at the scene. According to the State, it was not arguing that there was evidence that Harper fired a gun, but that the "rational inference" from the casings was that there was a gun at the scene.

¶19     The jury found Harper guilty. The trial court imposed a total sentence of four years of initial confinement and six years of extended supervision.[6] This appeal follows.

## DISCUSSION

¶20     On appeal, Harper contends that his convictions should be dismissed because the State failed to sufficiently corroborate his confession to possessing a firearm.[7]

---

[5] In its closing argument, the State again indicated that Detective Fedel testified that he observed Harper on the surveillance video wearing the baseball cap. As stated above, this testimony is not reflected in the transcript.

[6] We note that the judgment of conviction in this case was subsequently amended with respect to sentence credit. Harper does not challenge sentence credit on appeal and we do not address it further.

[7] According to Harper, because there was insufficient evidence that he possessed a firearm, the felon in possession conviction should be dismissed. Harper also contends that his two convictions for bail jumping must be vacated because they were premised on the felon in possession of a firearm conviction.

¶21   "A conviction will not stand on the basis of a defendant's confession alone." *See State v. Bannister*, 2007 WI 86, ¶23, 302 Wis. 2d 158, 734 N.W.2d 892.  Rather, "there must be some corroboration of the confession … to produce a confidence in the truth of the confession." *Id.*, ¶26 (citation omitted).  To satisfy the corroboration rule, the State must "present at least one significant fact [in addition to the confession] that gives confidence that the crime the defendant has been convicted of actually did occur." *Id.*, ¶31.  "A significant fact need not either independently establish the specific elements of the crime or independently link the defendant to the crime." *Id.*

¶22   A claim that a confession was not corroborated is a challenge to the sufficiency of the evidence presented at trial.  *See State v. Thomas*, 2023 WI 9, ¶9, 405 Wis. 2d 654, 985 N.W.2d 87.[8]   Whether the State has presented sufficient evidence to support a verdict is a question of law subject to our independent review.  *Id.*  We will affirm a verdict "unless the evidence, viewed most favorably to the verdict, is so lacking in probative value and force that no reasonable fact-finder could have found guilt beyond a reasonable doubt." *State v. Routon*, 2007 WI App 178, ¶17, 304 Wis. 2d 480, 736 N.W.2d 530.

¶23   On appeal, the State points to four pieces of evidence that, in its view, corroborate Harper's confession:  (1) Detective Fedel's testimony that there was a surveillance video showing that Harper was in the convenience store on the night in question; (2) the recovery of the tan baseball cap from the scene; (3) the

---

[8] We note that *State v. Thomas*, 2023 WI 9, 405 Wis. 2d 654, 985 N.W.2d 87, was pending in our supreme court during briefing in this case.  Harper in his brief requested the opportunity to file a letter brief if a decision was released while his appeal was pending.  Given the fact-specific nature of *Thomas* and this case, we have determined that additional briefing is unnecessary.

presence of Harper's DNA on the cap; and (4) the evidence that shell casings were found in the parking lot.

¶24 Harper argues that the shell casings did not corroborate his confession. Harper points to the fact that the jury was told that Harper possessed a gun, not fired one. Harper also points to the fact that he told the police that he possessed a nine millimeter gun and the casings found at the scene were .40 caliber. In addition, Harper asserts that the State told the jury the casings were not evidence that he fired a gun.

¶25 Even if we assume that the shell casings do not corroborate Harper's confession, we conclude that the State has offered "at least one significant fact that gives confidence that the crime the defendant has been convicted of actually did occur." *Bannister*, 302 Wis. 2d 158, ¶31. Here, the State presented evidence that there was a surveillance video showing that Harper was in the convenience store on the night in question, there was a tan baseball cap recovered from the scene, and the baseball cap had Harper's DNA. This evidence corroborated that Harper was at the place where he said he possessed a firearm and the date he possessed a firearm. This evidence "permits confidence" that Harper's possession of a firearm "actually did occur." *Id.*, ¶¶30, 31. Corroborating evidence "need not either independently establish the specific elements of the crime or independently link the defendant to the crime." *Id.*, ¶31.

¶26 Therefore, we conclude that the State satisfied its burden to present "some evidence" that Harper actually possessed a firearm as he confessed, and we affirm. *See id.*, ¶25. Based on the evidence presented, a reasonable jury could have concluded, beyond a reasonable doubt, that Harper was guilty of felon in

possession of a firearm and two counts of felony bail jumping.  *See **Routon***, 304 Wis. 2d 480, ¶17.

> *By the Court.*—Judgment and order affirmed.

> This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5. (2021-22).