COURT OF APPEALS
DECISION
DATED AND FILED

August 31, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2020AP351-CR**
**2020AP352-CR**
**2020AP353-CR**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2016CF1837
2016CF3024
2016CF4617

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

JESUS M. MEDINA FERNANDEZ,

   DEFENDANT-APPELLANT.

APPEALS from judgments of the circuit court for Milwaukee County: CAROLINA STARK, Judge. *Affirmed*.

Before Brash, C.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Jesus M. Medina Fernandez appeals judgments of conviction entered after a jury found him guilty of three counts of first-degree sexual assault by use of a dangerous weapon and two counts of second-degree sexual assault.  Medina[1] claims that the counts were wrongly joined for trial and that the evidence as to one of the counts was insufficient because the State failed to corroborate his confession.  We reject his claims and affirm.

## Background

¶2    In Milwaukee County Circuit Court case No. 2016CF1837, which underlies appeal No. 2020AP351-CR, the State filed a complaint on April 29, 2016, charging Medina with two counts of first-degree sexual assault by use of a dangerous weapon and one count of second degree sexual assault.  A.D.G. and A.L.E. were the alleged victims of the first-degree sexual assaults, and C.J.M. was the alleged victim of the second-degree sexual assault.  In Milwaukee County Circuit Court case No. 2016CF3024, which underlies appeal No. 2020AP352-CR, the State filed a criminal complaint on July 7, 2016, charging Medina with one count of first-degree sexual assault by use of a dangerous weapon.  K.M.G. was the alleged victim.  In Milwaukee County Circuit Court case No. 2016CF4617, which underlies appeal No. 2020AP353-CR, the State filed a criminal complaint on October 14, 2016, charging Medina with one count of second-degree sexual assault.  A.E.R. was the alleged victim.  The following facts regarding the charges are relevant to our discussion of the issues raised on appeal.

---

[1]  The appellant refers to himself as "Medina" in his appellate briefs.  We therefore do so as well.

2

¶3  A.D.G.: According to the criminal complaint in case No. 2016CF1837, A.D.G. told police that on December 11, 2015, a man driving a Honda approached her in the 1600 block of South 25th Street in Milwaukee. A.D.G. agreed to an act of oral sex with the man in exchange for $50.00. She got into his car, and he drove into an alley and displayed his penis. A.D.G. asked for payment first, but he ordered her to "suck it," and she engaged in mouth-to-penis intercourse after he reached for a screwdriver that she thought he might use to stab her. The man then forced her to remove her pants and have penis-to-vagina sexual intercourse with him. He used a condom that he discarded in the alley when he was finished. A.D.G. told police that the assailant was a Puerto Rican male with a thin build and a tattoo on his face. She also recalled the car's license plate number, which police determined had been issued to Medina. Medina subsequently gave a statement to police admitting that he paid A.D.G. for sex. Police found a condom in the alley, and at trial, a DNA analyst testified that Medina was the source of the sperm fraction on the inside of the condom and that A.D.G. was the source of the DNA on the exterior of the condom.

¶4  C.J.M.: According to the criminal complaint in case No. 2016CF1837, C.J.M. told police that on the night of April 17, 2016, a man approached her in a tavern's parking lot where she was arguing with a friend. The man identified himself as "Jesus Medina" and directed her to get into his car for her safety. Medina gave C.J.M. his telephone number before they separated. She called him at approximately 3:30 a.m. that same night, when she became concerned that she might face a threat from the person with whom she had argued earlier. Medina offered to sit with her at her home, and C.J.M. agreed. She met Medina and drove him to her home in the 1100 block of South 38th Street, where he accosted her and threatened to kill her and her children unless she had sex with

3

him. He then forcibly engaged in penis-to-vagina intercourse with her. When he was finished, she drove him to an area near the 3500 block of Lincoln Avenue, where he got out of the car. At trial, C.J.M. testified with the assistance of a Spanish-language interpreter, and the State showed that C.J.M. and Medina had communicated in Spanish. Additionally, the State presented testimony from a DNA analyst who said that Medina could not be excluded as the source of male DNA found in C.J.M.'s vagina several days after the incident.

¶5    A.L.E.: According to the criminal complaint in case No. 2016CF1837, A.L.E. told police that on April 21, 2016, she was in the area of South 15th Street and Greenfield Avenue when a man lured her into his vehicle by offering her marijuana. He then drove with her into an alley, hit her on the head, and forced her to perform oral sex. Next, the man produced a sharp object, held it to her neck, and performed an act of penis-to-vagina intercourse. Medina subsequently gave a statement to police acknowledging that he "picked A.L.E. up for a prostitution date." He said that she wanted to leave because he was "taking too long" so he grabbed her and forced her to stay in the car. At trial, the State played the 911 call that A.L.E. placed after the incident reporting that she was raped by a skinny Hispanic male who could not speak English very well; and the State presented testimony from a DNA analyst who said that Medina was a possible contributor to the DNA collected from A.L.E. later on April 21, 2016.

¶6    K.M.G.: According to the criminal complaint in case No. 2016CF3024, K.M.G. told police that in March 2016, she was in the 1300 block of South 23rd Street working as a prostitute. A Puerto Rican man with a thick accent and a teardrop tattoo on his face drove up to her in a car and offered her $50.00 for a "date." When she was in the car, the man produced a

screwdriver, held it against her neck, and forcibly engaged in penis-to-vagina intercourse with her before she escaped from the vehicle. Police showed K.M.G. a photo array, and she identified Medina as the assailant. Medina subsequently gave a statement to police and admitted to the incident with K.M.G.

¶7 A.E.R.: According to the criminal complaint in case No. 2016CF4617, A.E.R. told police that at approximately 2:30 a.m. on October 17, 2015, she was walking near the 2500 block of South 10th Street after spending the evening at various taverns. A man pulled up in a car that had a Puerto Rican flag hanging from the rear view mirror. The man spoke English that "was broken with Spanish," and he offered her a ride. She got into his car, and he drove her into an alley, applied pressure to her neck, and forced her to have penis-to-vagina intercourse. DNA testing revealed that Medina was a possible major contributor to the DNA mixtures collected from her body later that day.

¶8 Over Medina's objection, the circuit court joined the five sexual assault charges for trial. While the trial was underway, the State determined that it could not produce K.M.G. to testify. The State advised, however, that it intended to continue with the prosecution of the charge involving her and would rely on Medina's confession and physical evidence found in Medina's car to prove the allegation that Medina sexually assaulted K.M.G. After hearing argument and considering the State's offer of proof, the circuit court denied Medina's motion to dismiss the charge involving K.M.G. and permitted the State to proceed without her. The jury found Medina guilty of all five charges. He appeals.

5

**Discussion**

¶9      Medina first claims that the five charges were improperly joined for trial.  Joinder is governed by WIS. STAT. § 971.12 (2019-20).[2]  The "statute is to be broadly construed in favor of initial joinder." *State v. Prescott*, 2012 WI App 136, ¶15, 345 Wis. 2d 313, 825 N.W.2d 515 (citation omitted).  Such broad construction is warranted to serve the statute's goals and purposes, namely, to promote trial economy and judicial efficiency, and "to eliminate multiple trials against the same defendant, which promotes fiscal responsibility." *See State v. Salinas*, 2016 WI 44, ¶36, 369 Wis. 2d 9, 879 N.W.2d 609.  Whether crimes are properly joined is a question of law that we review *de novo*. *See id.*, ¶30.

¶10     Pursuant to WIS. STAT. § 971.12(4), two or more complaints or informations may be tried together if the crimes alleged could have been joined in a single charging document.  Pursuant to § 971.12(1), crimes may be charged together in the same complaint or information if, as relevant here, they "are of the same or similar character."  To be of the same or similar character, "[i]t is not sufficient that the offenses involve merely the same type of criminal charge." *State v. Hamm*, 146 Wis. 2d 130, 138, 430 N.W.2d 584 (Ct. App. 1988).  Rather, the "crimes must be the same type of offenses occurring over a relatively short period of time and the evidence as to each must overlap." *See id.*

¶11     The five crimes here were all violent sexual assaults involving penis-to-vagina intercourse and were therefore the same type of offense.  Further, the crimes occurred over a relatively short period of time, specifically, the seven-

---

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

6

month period from October 2015 through April 2016. We have recognized that "acts two years apart can be considered as 'occurring over a relatively short period of time'" *See* ***State v. Locke***, 177 Wis. 2d 590, 596, 502 N.W.2d 891 (Ct. App. 1993).

¶12 The evidence supporting the five crimes also overlapped. Medina asserts that the overlap was minor, but a minor overlap of evidence is sufficient "[i]n light of the broad construction we afford the joinder statute in favor of joinder." *See* ***State v. Linton***, 2010 WI App 129, ¶¶16-17, 329 Wis. 2d 687, 791 N.W.2d 222. In this case, Detective Jonathan Mejias-Rivera testified that he questioned Medina about all of the victims' allegations over the course of three custodial interviews. Mejias-Rivera also collected DNA from Medina that was tested in connection with the DNA samples collected from four of the five victims.

¶13 Moreover, when assessing whether evidence overlaps, we have considered whether "[t]he similarities between the acts in each incident tended to establish the identity of the criminal." *See* ***Hamm***, 146 Wis. 2d at 138. We concluded that modus operandi, time frame, and geographic area were relevant to that evaluation. *See* ***id.*** at 138-39. Here, each of the five charges involved a woman who was isolated and then attacked by a Puerto Rican or Spanish-speaking male. In each attack, the assailant applied force, usually to the victim's neck and often with a sharp object, and in every case the assailant ultimately engaged in violent penis-to-vagina intercourse. Further, all of the crimes occurred on the south side of Milwaukee County, a geographic area sufficient to support joinder. *See* ***State v. Hall***, 103 Wis. 2d 125, 139, 307 N.W.2d 289 (1981) (observing that crimes were closely connected geographically when they occurred "within the confines of the north metropolitan Milwaukee County area").

¶14     We therefore reject Medina's challenge to the joinder decision.  We conclude that, as a matter of law, the circuit court properly joined the five counts for trial.

¶15     We turn to the question of severance.  *See* **Locke**, 177 Wis. 2d at 596-97.  Pursuant to WIS. STAT. § 971.12(3), the circuit court may sever crimes that are properly joined if a party is prejudiced by the joinder.  The proper joinder of criminal offenses, however, is presumptively non-prejudicial, *see* **Linton**, 329 Wis. 2d 687, ¶20, and to rebut that presumption, a defendant seeking severance must show "substantial prejudice to his defense; some prejudice is insufficient," *see* **Prescott**, 345 Wis. 2d 313, ¶13.  The decision to sever matters that are properly joined rests in the circuit court's discretion.  *See* **Salinas**, 369 Wis. 2d 9, ¶30.

¶16     Accordingly, we must examine whether the circuit court erroneously exercised its discretion by not severing the charges against Medina on the ground that he faced substantial prejudice from joinder.  "In evaluating the potential for prejudice, courts have recognized that, when evidence of the counts sought to be severed would be admissible in separate trials, the risk of prejudice arising because of joinder is generally not significant."  **Locke**, 177 Wis. 2d at 597.

¶17     Admissibility of a person's other crimes, wrongs, or acts is determined under WIS. STAT. § 904.04(2), and involves a three-step test.  *See* **State v. Sullivan**, 216 Wis. 2d 768, 771, 576 N.W.2d 30 (1998).  First, the evidence must be offered for an acceptable purpose.  *See id.* at 772.  Second, the evidence must be relevant within the meaning of WIS. STAT. § 904.01.  *See* **Sullivan**, 216 Wis. 2d at 772.  If the evidence satisfies those first two steps, the circuit court must determine whether the evidence should nonetheless be excluded because its

probative value is substantially outweighed by unfair prejudice or other concerns enumerated in WIS. STAT. § 904.03. *See Sullivan*, 216 Wis. 2d at 772-73.

¶18  The first step of the *Sullivan* analysis requires only that the proponent of the evidence identify an acceptable purpose for admission to prove something other than propensity. *See State v. Payano*, 2009 WI 86, ¶63, 320 Wis. 2d 348, 768 N.W.2d 832. This step is "hardly demanding." *See id.* (citation and emphasis omitted). Here, the circuit court determined that the State's purposes in admitting each charge at a trial of the other charges would be to prove identity and a common scheme or plan. These are acceptable purposes for other the admission of other acts evidence. *See id.* & n.12. The evidence therefore satisfied the first step of the *Sullivan* analysis.

¶19  The other-acts evidence was also relevant.[3]  Where, as here, the purpose of other-acts evidence includes proof of identity, "'[t]he measure of probative value in assessing relevance is the similarity between the charged offense and the other act.' Similarity is demonstrated by showing the 'nearness of time, place, and circumstance' between the other act and the alleged crime." *See State v. Hammer*, 2000 WI 92, ¶¶30-31, 236 Wis. 2d 686, 613 N.W.2d 629 (citations omitted). As we have discussed, each of the acts in this case was near in time to the others, and each occurred within the same general geographic area.

---

[3] The State supports its argument in regard to relevance with a citation to an unpublished opinion that the State asserts was recommended for publication. The State's citation, however, is to a *per curiam* opinion that is ineligible for publication. *See* WIS. STAT. RULE 809.23(4)(b). The opinion includes a notification that the "opinion will not be published" pursuant to RULE 809.23(1)(b)5., and the opinion includes a standard warning that "*per curiam* opinions may not be cited except for the limited purposes specified in [] RULE 809.23(3)," that is, to support claims of issue or claim preclusion or law of the case. We remind the State that citation to unpublished opinions may subject the citing party to a penalty. *See* WIS. STAT. RULES 809.23(3), 809.83(2).

Each act was also similar to the others, involving a vulnerable woman—a prostitute, a person in fear, a person alone on the street late at night—lured by a Hispanic male into a secluded place where he perpetrated a violent penis-to-vagina assault. To be sure, some differences among the acts also existed. Nonetheless, because the incidents "share[d] common characteristics," the evidence was relevant and had probative value. *See id.*, ¶34.

¶20    As to the third step of the *Sullivan* analysis, Medina argues that he was prejudiced because the other-acts evidence had "too much" probative value. He asserts that "there is the overstrong tendency for the jury to find [him] guilty because he is apparently some sort of sex fiend who goes around assaulting prostitutes." We are not persuaded by this argument. To show prejudice, Medina must demonstrate that "the proffered evidence has a tendency to influence the outcome by improper means or ... causes a jury to base its decision on something other than the established propositions in the case." *See Sullivan*, 216 Wis. 2d at 789-90. Medina has not identified an improper factor that caused the jury to convict him. Rather, he has acknowledged a substantial amount of probative evidence that he committed a series of violent sexual assaults.

¶21    Accordingly, we conclude that the evidence of each assault would have been admissible at a trial of the others. Therefore, the decision not to sever the five charges constituted a proper exercise of the circuit court's discretion.

¶22    Medina next argues that the State failed to offer any evidence that corroborated his confession to sexually assaulting K.M.G., and his conviction for that crime must therefore be reversed. We disagree.

¶23    A defendant's confession alone is insufficient to sustain a criminal conviction. *See **State v. Bannister***, 2007 WI 86, ¶23, 302 Wis. 2d 158, 734 N.W.2d 892. Rather, "'there must be some corroboration of the confession ... to produce a confidence in the truth of the confession.'" ***Id.***, ¶26 (citation omitted). The State's obligation to offer corroborating evidence is mandatory but not onerous. "'If there is corroboration of any significant fact, that is sufficient.'" ***Id.*** (citation omitted). A claim that a confession was not corroborated is a challenge to the sufficiency of the evidence. *See **id.***, ¶32. Therefore, we assess the claim by considering the evidence "in a light most favorable to the verdict." ***Id.***

¶24    The State's evidence in regard to the assault of K.M.G. included testimony from Mejias-Rivera, who described Medina's confession to the crime. According to Mejias-Rivera, Medina said that K.M.G. was a prostitute that he encountered near 23rd Street and Greenfield Avenue, and that she agreed to have sex with him in his car for a fee. She got in his car and he drove into an alley with her, where they had penis-to-vagina intercourse. However, she "wanted to leave because he was taking too long.... He became upset. That's when he grabbed a screwdriver, put it against her neck." Medina said that he then completed the sexual act.

¶25    As corroboration for the confession, the State presented evidence that police found a screwdriver under the seat of Medina's car during a search following Medina's arrest. Further, Mejias-Rivera testified that he showed Medina a picture of that screwdriver, and Medina identified it as the one that he used when he sexually assaulted K.M.G.

¶26    Medina argues in his brief-in-chief that the corroboration in this case is insufficient to show that a crime occurred. As the State correctly responds,

11

however, the corroboration rule does not require the State to "independently establish the specific elements of the crime." *See id.*, ¶31. Indeed, "'corroboration ... can be far less than is necessary to establish the crime independently of the confession.'" *See Schultz v. State*, 82 Wis. 2d 737, 753, 264 N.W.2d 245 (1978) (citations omitted). Thus, in *Bannister*, where the defendant faced a charge of delivery of a controlled substance, evidence of morphine in a decedent's body was sufficient to corroborate the defendant's confession to delivering morphine to the decedent. *See id.*, 302 Wis. 2d 158, ¶34. Although the corroborating evidence offered by the State in *Bannister* did not, standing alone, show that the defendant committed a crime, the corroboration constituted a significant fact that permitted confidence in the confession. *See id.* Similarly here, the discovery of a screwdriver in Medina's car is a significant fact that permitted confidence in his confession to sexually assaulting K.M.G. while armed with a screwdriver.

¶27 Medina also argues in his brief-in-chief that a screwdriver is too common an item for its discovery to serve as corroboration. He states that "probably a majority of persons who own a car keep a screwdriver and other tools in the car." Medina makes these claims without an accompanying citation either to any supporting facts in the record or to any legal authority. We normally do not consider unsupported propositions. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). Moreover, Medina's reply brief fails to respond to the State's arguments regarding corroboration and instead ignores the corroboration question. Accordingly, we conclude that he concedes this issue. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578. For all the foregoing reasons, we affirm.

*By the Court.*—Judgments affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.